## KRIPPENDORF *v.* BONTE, ADMX.

*Master and servant — Chauffeur kills pedestrian — Scope of employment — Automobile owner not liable, when — Preponderance of evidence — Charge to jury erroneous, when — Interrogatories to jury — Submission mandatory, when — Section 11463, General Code.*

1. A master is liable for the negligent act of his servant only where such act is committed by such servant while acting within the scope of his employment, and it is incumbent upon plaintiff to establish this fact by a preponderance of the evidence.

2. The owner of an automobile is not liable for act of his chauffeur in killing a pedestrian where the car was used with the consent of the owner for the chauffeur's own pleasure and convenience and not for any purpose, business or pleasure of the owner, and it is error for the court to refuse to so charge.

3. In such case it was error for the court in its general charge on the question of liability of defendant to use the words in a disjunctive sentence "or by the permission of the defendant, then the defendant would be liable."

4. Under Section 11463, General Code, it is mandatory upon the court to submit interrogatories to the jury where they are proper and pertinent to the issue of the case.

(Decided April 16, 1917.)

ERROR: Court of Appeals for Hamilton county.

*Messrs. DeCamp & Sutphin; Mr. Leo J. Brumleve* and *Mr. Gregor B. Moorman,* for plaintiff in error.

*Messrs. Galvin & Galvin; Mr. A. D. Alcorn* and *Mr. R. S. Alcorn,* for defendant in error.

HAMILTON, J. This action was begun in the common pleas court of Hamilton county, Ohio, by the administratrix of William T. Bonte, to recover damages for the wrongful death of said William T. Bonte, alleged to have been caused by the negligence of the defendant below, Albert Krippendorf.

Bonte, on alighting from a street car on McMillan street between Symmes street and Essex Place in Cincinnati, Ohio, was struck and killed by an automobile belonging to the said defendant Albert Krippendorf, which at the time was being operated by one Burns, who was the regularly employed chauffeur of the said Krippendorf. The petition sets out at length the acts of negligence complained of: that the driver of the automobile was the servant, agent and employe of the defendant below, placed in charge thereof by said defendant; that said driver, operating said car at the time in question at a reckless and unlawful rate of speed, drove past the street car from which decedent was alighting, in violation of the city ordinance, striking and causing the death of said Bonte.

The answer admits the appointment of the administratrix; that decedent was struck by an automobile on McMillan street, Cincinnati, Ohio, dying soon thereafter. Then follows a general denial as to the other allegations of the petition. The answer further charges contributory negligence on the part of the decedent.

The cause was tried to a jury, resulting in a verdict for plaintiff for $7,500. The motion for a new trial was overruled, and judgment was rendered for the amount of the verdict. The defend-

ant prosecutes error to this court asking for a reversal of that judgment.

The petition sets forth fifteen grounds upon which reversal is asked. These several grounds are in effect covered by the propositions that the court erred in refusing special charges requested by the defendant below; erred in its general charge; erred in refusing the interrogatories requested by the defendant below; and that the verdict and judgment were against the weight of the evidence. These propositions will be discussed seriatim.

The petition avers that the driver of the automobile at the time of the injury complained of was a servant, employe and agent of the defendant Krippendorf—which was a necessary allegation. This is denied by the defendant. And all the questions involved turn on this proposition.

Upon the authority of *White Oak Coal Co.* v. *Rivoux,* 88 Ohio St., at page 24, and *Lima Ry. Co.* v. *Little,* 67 Ohio St., 91, the liability of the defendant Krippendorf is based upon the wrongful and negligent act of his servant. The defendant, Krippendorf, however, is not liable unless the acts complained of were committed while said servant was acting within the scope of his employment. It was incumbent upon the plaintiff below to establish by a preponderance of the evidence that defendant's servant Burns was acting within the scope of his employment at the time in question.

It may be admitted for the purposes hereof that the death of decedent was caused by the negligent operation of the automobile by Burns, who was the regularly employed chauffeur of the said defend-

ant Krippendorf, and that the automobile was the property of said Krippendorf.

While there was other evidence as to the duties and privileges given by said Krippendorf to the said chauffeur Burns, the controlling evidence as to the capacity in which Burns was acting at the time of the accident complained of is set forth in the following evidence. The defendant, his wife, his brother, and his sister-in-law, were driven by Burns in defendant's machine to the Church of the Advent to attend a wedding. On this trip Burns informed said Albert Krippendorf that he had tickets to the automobile show at Music Hall that night. On cross-examination of Albert Krippendorf the following questions were asked and answers given:

"Q. Now Burns spoke to you between your brother's home and the Church of the Advent and told you that he had tickets for the Automobile Show, did he not?

"A. Yes.

"Q. Which was being held down town, at Music Hall in Cincinnati?

"A. Yes.

"Q. That night?

"A. Yes.

"Q. Now what time in the evening was that?

"A. That was about a quarter of six.

"Q. Now at that time you told him that he could go and you wanted him to return to your house by half-past nine and he should take your car to go, didn't you?

"A. Yes.

"Q. Now what time did you give him those instructions?

"A. At a quarter of six, going to the Church of the Advent, was the first time I gave them to him, and later I told him, when we had gotten to the Rowe residence, I told him that he could—he asked to get off, if he could have the car, and I told him yes, he was off for the evening, I wouldn't want him again.

"Q. But that was later in the evening?

"A. Around seven o'clock.

"Q. But the other instruction was given to him when he spoke of having the tickets?

"A. Yes.

"Q. And you wanted him back at your house so that you could catch him by telephone?

"A. Yes.

"Q. And you told him to take the car to go to the Automobile Show at that time?

"A. I told him he could have the car.

"Q. Well, just in the language I gave you—you instructed him to take your car and be back at nine-thirty?

"A. I didn't instruct him; I told him he could take the car."

The re-direct examination of Albert Krippendorf developed the following:

"Q. Now repeat again just what you told him to do.

"A. When we got in the automobile and left Carl Krippendorf's house, I told him to go to the Church of the Advent, and he was to wait there, and after we left there we were going to the Rowe residence, and then he would go home and be at

my house at nine-thirty and I would telephone him, and he said he had tickets for the Automobile Show and I said, 'Well, you had better use the car so you can be back in time.'

\*          \*          \*

"Q. What instructions had you given Burns after you left the Church?

"A. I told him we had made arrangements to go home with Carl Krippendorf; they would take us home from the Rowe residence and we wouldn't need him.

"Q. What instructions did you give him when you reached the Rowe residence and had stepped from the automobile?

"A. As I stepped from the automobile he said, 'Can I have the car to go to the Automobile Show?' and I said, 'Yes, you are off for the evening; I won't need you.'"

Mrs. Carl Krippendorf, on direct examination, testified as follows:

"Q. Did you hear any conversation between the chauffeur and Mr. Albert Krippendorf at that time?

"A. I did.

"Q. Please state what was said either by Mr. Krippendorf or by the chauffeur.

"A. The chauffeur asked if he could have the automobile and Mr. Krippendorf replied that he could have it, and that he was off for the evening, —he wouldn't be needed.

"Q. What did the chauffeur then do?

"A. He drove away."

The testimony of Mrs. Albert Krippendorf, Carl Krippendorf, and the chauffeur Burns, while not in the exact language, is to the same effect with reference to the later instructions given, that is, that the chauffeur asked permission to use the automobile to take his mother and party to the automobile show, and consent was given by the defendant Krippendorf with the statement that he was "off for the evening." The evidence discloses that the said Burns thereupon got his mother, sister and brother-in-law in the automobile, and was proceeding to get his fiancée and party, to go to the automobile show, when the accident occurred.

Upon this statement of facts several special charges were requested by the defendant below, which were refused.

Special charge No. 1 requested by defendant, and refused by the court, is as follows:

"The court charges you that if you find from the evidence that at the time of the injury, the automobile of defendant was used by his regularly employed chauffeur with the permission and consent of the defendant for the chauffeur's own pleasure and convenience, and not for any purpose, business or pleasure of the defendant, then the defendant is not liable and your verdict must be for the defendant."

Under the state of facts as disclosed by the evidence above set out, in view of the holdings in the cases of *Coal Co.* v. *Rivoux* and *Railway Co.* v. *Little, supra,* we think that special charge No. 1 requested by the defendant below properly states the law applicable to the instant case, and that the

refusal to give this charge was prejudicial error.

Special charges Nos. 2, 3, 5, 6 and 10 were merely cumulative and for that reason might have been properly refused.

Special charges Nos. 11 and 13 were properly refused, as these charges would in effect charge as a matter of law which facts in the case do, and which do not, constitute negligence, which is a question for the jury.

The general charge of the court below is complained of in that the court charged the jury that permissive use of the automobile made the defendant liable. Running through the charge of the court as to the question of liability of the defendant, we find the court in many instances used the words in a disjunctive sentence, "or by the permission of the defendant, then the defendant would be liable." This was in effect charging the jury to return a verdict for the plaintiff below; for it was conceded that defendant gave the servant Burns permission to use the automobile for his own pleasure in going to the automobile show and taking the members of his own family with him. To hold that use of an automobile by permission of the owner would make the owner liable would be equivalent to holding that the owner of an automobile is an insurer against negligence if his automobile is used with his consent. The lower court may not have intended to go this far, and may have expected the jury would take this statement into consideration in connection with other statements and facts in the case, but the disjunctive use of the expression above quoted, repeated over and over again, could have misled

the jury; and we are of the opinion that in respect to the use of this expression in the general charge the court committed prejudicial error.

The defendant below submitted six interrogatories and requested their submission to the jury, which was refused by the court. Section 11463, General Code, provides:

"When either party requests it, the court *shall* instruct the jurors, if they render a general verdict, specially to find upon particular questions of fact, to be stated in writing, and shall direct a written finding thereon. The verdict and finding must be entered on the journal and filed with the clerk."

We think the interrogatories were proper and pertinent, going to the question of contributory negligence, and might be determinative of that material fact, and should have been submitted to the jury for answer.

This court is further of the opinion that the verdict and judgment are against the weight of the evidence. It being incumbent upon the plaintiff below to establish by a preponderance of the evidence that the chauffeur Burns was acting within the scope of his employment when the injury complained of occurred, we will consider the evidence upon this point. The uncontroverted testimony of the defendant below is to the effect that he gave Burns, his said chauffeur, two separate instructions; the first, at the church, that he, Burns, might use defendant's automobile to go to the automobile show, but that he should return to his home by 9:30. This instruction was later changed by a second instruction to the effect that defendant with his wife had arranged to go to

their home from the wedding supper in the Carl
Krippendorf car and would therefore not need de-
fendant's car, and that he, Burns, could use de-
fendant's car to take his mother and party to the
automobile show and need not return that night,
as he was off for the night. Defendant below was
supported in this testimony by his wife, his brother,
his sister-in-law, and by the chauffeur Burns, and
no testimony is offered by the plaintiff below to
controvert this testimony, and no evidence is shown
to the contrary, unless it be, as claimed by counsel
for plaintiff below, that the testimony should be
discredited by reason of relationship and interest
of these witnesses, and the ease with which the
instructions might be changed to suit this case.
It is contended by counsel for plaintiff below that
the first instructions given by defendant to the
chauffeur would without question make the defend-
ant liable, and that these instructions only should
be considered, and that the last instructions, which
would admittedly relieve the defendant of liability,
should not be given full credence. We see no
reason for not taking this testimony at its face
value. If there had been any attempt to mould
the testimony to fit the case it would have been
much easier to leave out the first instructions alto-
gether, but the fact of the two separate instructions
gives additional strength to defendant's testimony.
The circumstances of the chauffeur desiring to
take his mother and relatives to the show, the
arrangement of defendant and his wife to go home
from the wedding party in his brother's automo-
bile, the using of the car by Burns as requested, all
support the statement that Burns was "off for the

night." In accordance with permission to use the automobile the chauffeur Burns left the defendant for the night, got his relatives in the machine, and started to go for his fiancée, to take them to the automobile show; and while on this trip the accident happened. We can see nothing in this state of facts to fix a liability for the act complained of on the defendant below. We are of the opinion that under the evidence plaintiff below has not only failed to establish by a preponderance of the evidence that the chauffeur Burns was acting within the scope of his employment at the time in question, but on the other hand the decided weight of the evidence is to the contrary, that he was not so acting at the time of the injury.

It must be conceded that the chauffeur Burns was guilty of negligence in the case. But as the question of his negligence is not necessary in determining the case we have not discussed that branch of it; and, further, it was not necessary to discuss the effect of the violation of the city ordinance, if such occurred.

For the reasons above stated the judgment will be reversed and the cause remanded for a new trial.

*Judgment reversed, and cause remanded.*

Jones, P. J., and Gorman, J., concur.