It, therefore, appears that a case for injunctive relief has been established and a decree may be presented in accordance with this opinion.

*Decree accordingly.*

HILDEBRANT, P. J., and MATTHEWS, J., concur.

YOUNG, APPELLEE, *v.* FEATHERSTONE MOTORS, INC., ET AL., APPELLANTS.

(No. 5011—Decided March 18, 1954.)

*Messrs. Hamilton & Kramer,* for appellee.
*Messrs. Wiles & Doucher,* for appellants.

WISEMAN, P. J.   This is an appeal on questions of law from a judgment by the Common Pleas Court of Franklin County on a verdict in favor of plaintiff.

Plaintiff alleges he was the owner of an airplane which was stored in a hangar located at the Sullivant Avenue Airport, which is located on the south side of Sullivant Avenue, a short distance beyond the corporate limits of the city of Columbus.   Sullivant Avenue is a public street and highway extending in an easterly and westerly direction along the northern boundary of such airport.   Plaintiff alleges further that on the afternoon of April 2, 1951, defendants Featherstone Motors, Inc., and Alexander Hendricks owned and operated a motorcycle which was proceeding in a westerly direction on Sullivant Avenue, near the driveway into the airport; that to the rear of said motorcycle one James Maloney was operating a Plymouth automobile, which he owned, in a westerly direction on Sullivant Avenue; that the motorcyle and automobile collided, the motorcycle crashing through

the door of the hangar and into the airplane, causing damage in the amount of $1,000; that plaintiff used the airplane in his business; and that he was deprived of the use of the airplane for 30 days, to his damage in the sum of $600.

Plaintiff alleges further that Featherstone and Hendricks were negligent in the following particulars:

1. They operated a motorcycle which was not equipped with a rear vision mirror, making it impossible for them to have a clear view of the traffic as it proceeded west on Sullivant Avenue.

2. They made a left turn, without giving any signal therefor, directly across the path of the vehicle operated by defendant Maloney.

3. They failed to see the vehicle of Maloney, although the way was clear and there was no obstruction to view.

4. They failed to heed the horn signal sounded by Maloney, but cut sharply across the path of Maloney's vehicle.

5. They failed to maintain their motorcycle under control.

6. Maloney was negligent in that he failed and neglected to maintain his automobile under control.

Plaintiff alleges further that the negligence of the defendants was the direct and proximate cause of the damage and asks damages in the sum of $1,600 against the defendants and each of them.

In a joint answer by Featherstone and Hendricks, they allege that on said date a motorcycle belonging to Featherstone was being operated in a westerly direction on Sullivant Avenue, and that a collision occurred between the motorcycle and a motor vehicle being operated by Maloney. The answer interposes a general denial and an admission of negligence as alleged against Maloney.

In a separate answer, Maloney alleges that if plain-

tiff suffered any damage it was not because of Maloney's negligence, but was caused by the negligence of the other defendants, which allegation was followed by a general denial.

The evidence shows that Hendricks was proceeding westerly on Sullivant Avenue at a rate of speed of between 35 and 40 miles per hour; that Maloney was driving his automobile at some distance to the rear at about the same rate of speed; that as Hendricks neared the entrance to the airport he signaled that he was about to make a left turn, by extending his left arm; that Maloney accelerated his speed to about 50 miles per hour intending to pass Hendricks on the left; that, as Hendricks turned left to enter the entrance to the airport, Maloney's automobile and the motorcycle collided; that the collision occurred near the south edge of the highway; that Maloney applied his brakes but did not sound the horn or give any signal of his intention to pass; and that skid marks made by Maloney's automobile extended about 100 feet east of the point of collision, starting in the north lane or near the center of said highway, and then diagonally across the south lane of the highway to the point of collision. Hendricks testified that he knew that Maloney's automobile was following at his rear for a distance of several blocks; that he observed said automobile by turning his head; and that he signaled twice of his intention to make a left turn, by extending his arm. The motorcycle was not equipped with a rear view mirror as required by law.

The evidence shows that, when the collision occurred, Hendricks was thrown off the motorcycle which was a heavy three-wheeled vehicle; that the motorcycle continued on into the airport, crashed through the door of the hangar and collided with the airplane, causing substantial damage. The difference in the reasonable value of the airplane before and after the collision was

$1,000. The plaintiff claims damages for loss of use of the airplane in his business, which was that of an automobile salesman. The evidence shows that the airplane was under repair for less than ten days, but plaintiff in his petition claims loss of use for 30 days, and that a reasonable rent charge for a like airplane was $25 per day. The plaintiff did not rent another airplane and did not testify specifically as to the necessity for the use of an airplane during the time his airplane was out of use. Plaintiff's claim of damages for loss of business use is based on his testimony that he would occasionally fly to other cities over the week ends; that on several occasions he flew auto parts to other cities; and that he would take a friend for a ride in the airplane during the week end with the thought in mind that he would be better able to sell such friend automobiles. The evidence shows further that plaintiff was sales manager, officer and director of Featherstone.

On the question of loss of use of the airplane for business purposes, the plaintiff on cross-examination testified as follows:

"Q. How did you have any loss of use here if you were working for Featherstone it would be Featherstone's loss, wouldn't it? A. I actually was working for Featherstone Motors, of course it was up to me to get as much business as possible. I got a small per cent of the year's business in commission.

"Q. How much business did you actually pick up on any of those trips to Cleveland or Indianapolis or any place else that you flew your airplane? A. Probably for business, none.

"Q. Just tell us one trip that you made for business of the Featherstone that you made any money yourself personally? A. That I personally made money on?

"Q. Yes. A. Well, I don't think you could look at it from that angle, I personally.

"Q. Answer my question. A. I don't know of any trip. .

"Q. Then that is the only business you had working for Featherstone? A. Yes.

"Q. In fact, you were a director and officer of the Featherstone Company, weren't you? A. Yes."

The evidence shows that Hendricks was an employee of Featherstone, that Featherstone owned the motorcycle, and that at the time of the collision Hendricks was on a mission to get an automobile at the airport and return it to Featherstone for purpose of repair.

At the close of plaintiff's case, and at the close of all the evidence, counsel for Featherstone and Hendricks moved for directed verdict, which motion was overruled.

The jury returned a general verdict against all three defendants in the sum of $1,600. Counsel for Featherstone and Hendricks submitted interrogatories which were answered by the jury as follows:

"Interrogatory No. 1.

"Do you find defendants, Featherstone Motors and Alexander Hendricks, were negligent? Answer: Yes.

"If so, what were their acts of negligence? Answer: Failing to have a rear view mirror.

"Interrogatory No. 2.

"If your answer to interrogatory No. 1 is no, you need not answer this. If your answer was yes, was such negligence the direct and proximate cause of the damage to the plaintiff? Answer: Yes."

Featherstone and Hendricks filed a motion for judgment notwithstanding the verdict, which was overruled; also a motion for new trial, which was overruled. Featherstone and Hendricks are the only appellants.

Appellants have filed seven assignments of error, as follows:

1. In overruling motion for directed verdict at close of plaintiff's case.

2. In overruling motion for directed verdict at close of all the evidence.

3. In overruling motion for judgment notwithstanding the verdict.

4. In overruling motion for new trial.

5. In that the verdict is excessive.

6. In that the verdict and judgment are contrary to law and against the manifest weight of the evidence.

7. Other errors apparent on the face of the record.

Counsel for appellants in their brief discuss five propositions raised by the errors assigned.

First. The first, second and fourth assignments of error are discussed by appellants under this heading. The petition alleges joint operation of the motorcycle by Featherstone and Hendricks, and counsel for appellants concede that the petition is not open to motion or demurrer. *Davis* v. *Montei*, 38 Ohio Law Abs., 147. Appellants contend that, although joint operation is alleged, the proof does not sustain joint operation, but does show a master and servant relationship. Master and servant cannot be joined in an action for the negligence of the servant if the master's liability arises solely from the relationship between them, under the doctrine of *respondeat superior*. 26 Ohio Jurisprudence, 671, Section 661. A motion to require the plaintiff to elect was in order. *French, Admr.,* v. *Central Construction Co.,* 76 Ohio St., 509, 518, 81 N. E., 751, 12 L. R. A. (N. S.), 669; *Losito* v. *Kruse, Jr.,* 136 Ohio St., 183, 187, 24 N. E. (2d), 705, 126 A. L. R., 1194; 26 Ohio Jurisprudence, 671, Section 662. But the appellants did not make a motion to require plaintiff to elect. Counsel for appellants contend that, upon such petition and proof, their motions for directed verdict should have been sustained. The point made by ap-

pellants is that, since the proof showed the relationship of master and servant in an action based on joint operation, the failure to allege agency in the petition was fatal to plaintiff's case. There are cited *White Oak Coal Co.* v. *Rivoux, Admx.,* 88 Ohio St., 18, 25, 102 N. E., 302, 46 L. R. A. (N. S.), 1091, Ann. Cas. 1914C, 1082; *Pollock* v. *Russell Harp, Inc.,* 14 Ohio Law Abs., 667, 668; *Krippendorf* v. *Bonte, Admx.,* 9 Ohio App., 130, 132; 26 Ohio Jurisprudence, 669, Section 659; for the proposition that, in an action against the master for injuries caused by his servant, where the agency is alleged, the plaintiff must allege in the petition the essential facts which give rise to the application of the doctrine of *respondeat superior.*

In *Bozzelli* v. *Industrial Commission,* 122 Ohio St., 201, 171 N. E., 108, and *Thomas* v. *Foody,* 54 Ohio App., 423, 425, 7 N. E. (2d), 820, it was held that the sufficiency of the petition may be attacked at any time by a motion for a directed verdict. We agree that both these propositions of law are well established, but they have no application here. The petition in this case states a cause of action; the evidence when given a construction most favorable to plaintiff constitutes a cause of action against each of appellants. It was stated in the *Bozzelli case* that "where neither the petition nor the facts proven constitute a cause of action in plaintiff's favor, it becomes the duty of the court to render judgment against the plaintiff." In the instant case the petition states and the proof constitutes a cause of action.

A similar question was presented to this court in *Hite* v. *Andrews,* No. 4780, Franklin County, decided October 29, 1952, where the petition alleged joint operation and the evidence showed the driver to be the agent of the other defendant, the owner. Agency was not made an issue by the pleadings, but was made an issue

by the evidence, as in the instant case. In the *Hite case* the plaintiff, on her own motion, dismissed the agent and elected to proceed against the principal. We held that the case was properly submitted to the jury on the petition, which failed to allege agency, and the evidence, which proved agency. This court had a similar question before it in *Rodenfels, Exr.,* v. *Great Eastern Stages, Inc.,* 30 Ohio Law Abs., 42, 52.

It cannot be questioned that the evidence presented a case of misjoinder. The plaintiff could have been required to elect, had the appellants so moved. What is the effect of the failure of the appellants to move to require plaintiff to elect?

In *Stevenson* v. *Hess,* 10 Ohio Law Abs., 43, it was held:

"Action being improperly brought against master and servant together, defendants will be deemed to have waived the defect of misjoinder of parties by not objecting thereto."

In *Dow Drug Co.* v. *Nieman,* 57 Ohio App., 190, 13 N. E. (2d), 130, the fourth paragraph of the syllabus is as follows:

"Misjoinder of parties is ground for demurrer when the misjoinder appears on the face of the petition; otherwise the objection should be made by answer. If not made in either way it is waived."

The court in that case cited Section 11311, General Code (Section 2309.10, Revised Code), which provides that, if the question of misjoinder is not raised by demurrer or answer, "the defendant shall be deemed to have waived it, except * * *." However, the right of defendant to require the plaintiff to elect is preserved. *French, Admr.,* v. *Central Construction Co., supra.* In the instant case the appellants did not avail themselves of any such rights.

A motion for a directed verdict is not a substitute

for a motion to elect, as it raises a different question. In *Sylvania Development Co.* v. *Start,* 25 Ohio App., 411, 413, 414, 158 N. E., 206, the court held:

"When the plaintiff rested its case, the defendants moved the court for a directed verdict, which was granted, and judgment has been rendered thereon. As the bill of exceptions contains evidence tending to show liability of each defendant, the court was in error in granting the motion for a directed verdict. When misjoinder of causes of action or of defendants does not appear upon the face of the petition, the issue may be raised by answer, or, when it first appears by the evidence, by motion to elect, in which case the proper procedure is not to render a directed verdict against the plaintiff if evidence has been introduced tending to show liability of the defendants, but to require an election. *French, Adm'r.,* v. *Central Const. Co.,* 76 Ohio St., 509, 81 N. E., 751, 12 L. R. A. (N. S.), 669; *Village of Mineral City* v. *Gilbow,* 81 Ohio St., 263, 273, 90 N. E., 800, 25 L. R. A. (N. S.), 627; *Copper River & N. W. Ry. Co.* v. *Heney* (C. C. A.), 211 F., 459.

"In the last case cited the rule is stated by the court, on page 462, as follows:

" 'But if it had been true, as contended by the defendants, that misjoinder was disclosed by the plaintiff's evidence, that fact, it is clear, would not entitle the defendants to a directed verdict in their favor. Their remedy was to move the court at the conclusion of the testimony to require the plaintiff to elect as against which of the defendants he would proceed.' "

If the defendants fail to object to the misjoinder by a motion to elect, they will be deemed to have waived the defect. 26 Ohio Jurisprudence, 672, Section 662.

In our opinion the case was properly submitted to the jury on the petition and evidence adduced.

Second. Appellants claim their motion for judgment

*non obstante veredicto* should have been sustained.
The third and fourth specifications of negligence were
taken from the jury because of lack of proof. The
case was submitted on the first, second and fifth speci-
fications, which were: Failure to have the motorcycle
equipped with a rear vision mirror; making a left turn
without giving a proper signal; and failure to keep
the motorcycle under control. In the answer to the
interrogatories, the jury found the defendants guilty
of only one act of negligence, to wit, "failing to have
a rear view mirror." The failure of the jury to spell
out completely the statutory requirement with respect
to how and where the mirror should be fastened to the
motorcycle is immaterial. The point is made that the
failure of the jury to find the existence of any other
act of negligence is equivalent to a finding on such
claim of negligence against the party having the bur-
den to establish it. Without question this principle
of law has application here. *Masters* v. *New York
Central Rd. Co.,* 147 Ohio St., 293, 70 N. E. (2d), 898.
The statutory requirement with respect to rear view
mirrors is found in Section 6307-95, General Code
(Section 4513.23, Revised Code), which provides as
follows:

"Every motor vehicle and trackless trolley shall be
equipped with a mirror so located as to reflect to the
operator a view of the highway to the rear of such ve-
hicle or trackless trolley. Operators of vehicles, street-
cars and trackless trolleys shall have a clear and un-
obstructed view to the front and to both sides of their
vehicles, streetcars or trackless trolleys and shall have
a clear view to the rear of their vehicles, streetcars or
trackless trolleys by mirror."

It will be observed that the act of negligence found
by the jury was the failure to have a rear view mirror.
The jury did not find that Hendricks did not see or

could not see the automobile driven by Maloney to his rear. In fact, the undisputed evidence is that Hendricks knew Maloney was at his rear; that Hendricks knew of the presence of the automobile, while traveling the distance of several blocks; and that he turned his head to make the observation. The jury found that the failure to have the motorcycle equipped with a rear view mirror was the direct and proximate cause of the damage. Counsel for appellants contend that the failure to find the defendants guilty of the other claimed acts of negligence is tantamount to a finding that Hendricks, in making a left turn, gave a proper signal, as Hendricks testified, and that Hendricks maintained proper control of the motorcycle. It is argued by counsel for appellants that in light of these findings, to wit, proper control, proper left turn, and proper signal, together with the fact that Hendricks observed Maloney at his rear and exercised ordinary care in all other respects, and the failure to find that Hendricks was negligent in the operation of the motorcycle, the absence of a rear view mirror could not as a matter of law be the proximate cause of the damage.

We are required to test the general verdict by the answers to the interrogatories. If the special findings are not inconsistent with, or repugnant to, the general verdict, the general verdict should stand and judgment should be rendered on it. 39 Ohio Jurisprudence, 1175, Section 441. It is only when the special finding of facts is inconsistent with the general verdict, that the special finding shall control over the verdict. Section 11420-18, General Code. We find no inconsistency between the special findings and the general verdict. The question raised by counsel for appellants would require the court to examine the evidence. This we cannot do. The trial court, in ruling

upon a motion for judgment on special findings, must determine from the pleadings, verdict and special findings, without reference to the evidence, whether the special findings are inconsistent with the general verdict. *Fox* v. *Conway et al., Recrs.,* 133 Ohio St., 273, 275, 13 N. E. (2d), 124; *Board of Commrs.* v. *Deitsch,* 94 Ohio St., 1, 113 N. E., 745; *Gearhart* v. *Columbus Ry., Power & Light Co.,* 65 Ohio App., 225, 29 N. E. (2d), 621; *Hamilton* v. *City of Cleveland,* 93 Ohio App., 93, 104, 110 N. E. (2d), 50. See 39 Ohio Jurisprudence, 1180, Section 443, and cases cited, in which section it is stated:

"In passing a motion for judgment on special findings, the court will consider all the interrogatories and answers thereto together, read them as a whole, and indulge in any reasonable hypothesis in order to reconcile the answers to the special interrogatories with the general verdict."

In *Gearhart* v. *Columbus Ry., Power & Light Co., supra,* in discussing the question, this court, on page 234, said:

"In order for special findings to be inconsistent, it must appear that the findings are irreconcilable with the general verdict and the conflict must be clear. Special findings override the general verdict only when both can not stand, and when the special findings can not *by any hypothesis* be reconciled with the general verdict. The evidence can not be considered in determining such conflict. The general verdict prevails over the special finding if there could have been, under the pleadings, proof of supposable facts not inconsistent with those specially found, sufficient to sustain the verdict."

In the instant case, under the pleadings, there could have been proof of supposable facts not inconsistent with those specially found, sufficient to sustain the ver-

dict. We find the special findings to be consistent with the general verdict, and, therefore, we do not determine whether interrogatory No. 2 is a mixed question of law and fact.

This assignment of error is not well made.

Third. The evidence shows that the plaintiff was the sales manager, an officer and a director of Featherstone. Appellants contend that if Featherstone was negligent by failing to equip the motorcycle with a rear view mirror, such negligence is chargeable to the officers and directors of Featherstone, and that, therefore, plaintiff, being an officer and director, would be charged with such negligence, which would prevent recovery. A novel situation is presented, which raises an interesting legal question. In our opinion the negligence of Featherstone, if negligence be proved, would not be imputed to a single director or officer, under the circumstances in this case.

In 3 Fletcher, Cyclopedia on Corporations (Perm. Ed.), 711, Section 1137, the controlling rule is stated as follows:

"The general, if not universal, rule is that an officer of a corporation *who takes part in the commission of a tort* by the corporation is personally liable therefor; but that an officer of a corporation who takes no part in the commission of the tort committed by the corporation is not personally liable to third persons for such a tort, nor for the acts of other agents, officers or employees of the corporation in committing it, *unless he specifically directed the particular act to be done, or participated, or co-operated therein.*" (Emphasis ours.)

On page 714, Section 1137, *ibid.*, it is stated:

"Officers of a corporation 'are not held liable for the negligence of the corporation merely because of their official relation to it, but because of some wrong-

ful or negligent act by such officer amounting to a breach of duty which resulted in an injury * * *. To make an officer of a corporation liable for the negligence of the corporation there must have been upon his part such a breach of duty as contributed to, or helped to bring about, the injury; that is to say, he must be a participant in the wrongful act.' And this is the rule prevailing in most of the jurisdictions.''

In 10 Ohio Jurisprudence, 787, Section 579, the rule is stated:

''Officers and agents of corporations are not liable for corporate acts and debts by reason of their official relation to the corporation; they are merely agents of the corporation, and on principle should no more be held liable therefor than any other agent should be held liable for the acts and debts of his principal. In fact, it is not disputed that officers and agents of corporations are protected from private liability while acting within the scope of the corporate powers.''

Fourth. The court in its general charge instructed the jury on the issue of joint operation. The jury retired for deliberation. Soon thereafter the court excused the jury for the night. On the following morning, when the jury returned and before deliberations began, the court instructed the jury on the question of agency. On the issues made by the evidence, this instruction was proper.

Fifth. The appellants contend that the verdict is excessive. The damage to the airplane was fixed at $1,000. Any damages allowed in excess of this amount would necessarily be allowed for loss of use. In our opinion the evidence presented, which has been set forth in the review of the evidence, is too speculative to go to the jury, and does not afford any proper basis for the allowance of damages to the plaintiff. If there was a loss of use, it was the loss of Featherstone and not that of the plaintiff.

If plaintiff consents to a remittitur, reducing the judgment to $1,000, the judgment will be affirmed, otherwise the judgment will be reversed and cause remanded for a new trial.

MILLER, J., concurs.

HORNBECK, J., dissenting. I am in agreement with the law as announced in the majority opinion, but, in my judgment, it does not reach the infirmity in the verdict. The verdict cannot be supported by the facts, the law as announced by the majority, the answers to the special interrogatories, and the general charge of the court.

The verdict and judgment are against all three defendants. It is said in the majority opinion that the testimony adduced did not make a case to go to the jury upon the averment of the joint negligence of the defendants.

The language of the general charge, which the jury must have applied to the facts in reaching its verdict against all of the defendants, is:

"If you find that they were all negligent and the negligence combined to produce this damage, then you will find a verdict for the plaintiff against all of the defendants."

The foregoing language was a part of the general charge first given to the jury. Later the jury was recalled and for the first time instructed upon the theory of liability of Featherstone, upon the principle of *respondeat superior*, in this language:

"I overlooked instructing you as to *anything* about the liability of a master for the action of his servant. The law is that the master is liable for any damage caused by the negligence of his servant acting within the scope of his employment. And, in this case, if Hendricks was acting within the scope of his employment

for the Featherstone Motors Company and was negligent and that negligence proximately caused damage to the plaintiff, then the Featherstone Motors Company would be liable.''

The answer to interrogatory No. 1 is that Featherstone *and* Hendricks were negligent.

It is manifest that the jury was not charged that a joint verdict could be returned against Featherstone as the principal and Hendricks as the agent. The only finding that could have been made on the issues between the plaintiff and Featherstone and Hendricks, on the foregoing charge. if the jury found Hendricks was negligent and was the agent of Featherstone and acting within the scope of his employment, would have been against the company. It did not so find.

It is obvious that the only authority to support the answers to the interrogatories and the verdict against Featherstone, Hendricks and Maloney is the charge upon the negligence of joint tort-feasors combining and concurring to cause the injury to the plaintiff. There is nothing in the record to have carried this issue to the jury.

The fact that Featherstone and Hendricks did not exercise their right to require plaintiff to make an election will not save a verdict which does not respond to the issues and to the correct principle of law as set out in the charge of the court.