DECISION AND JUDGMENT ENTRY
{¶ 1} Appellant, Merle's Automotive, Inc. ("Merle's Inc.") and Jimmy V. Allen ("Allen"),[1] appeal the judgment of the Municipal Court of Toledo, Ohio, Housing Division.[2] That court found appellants jointly and severally liable for costs incurred by appellee, the city of Toledo, for abating a public nuisance on property which, the trial court found, appellants owned.
 {¶ 2} In November 2002, a fire occurred in a structure located at 1102 Girard Street, Toledo, Ohio ("subject property"). Early in December 2002, the city of Toledo's Division of Inspection investigated complaints that the subject property was a nuisance. Rachelle Bundy, an investigator for appellee, found that Merle Schultz was the record owner of the subject property. She also found that, in July 1999, appellee had served a previous public nuisance determination on Merle Schultz as owner of the property.
 {¶ 3} On December 9, 2002, appellee, through investigator Bundy, issued a public nuisance determination for the subject property. This determination was posted on the property, addressed to Merle Schultz, and it ordered him to abate the nuisance on the property. No action was taken to comply. Sometime between December 2002 and June 2003, appellee discovered that Schultz had passed away on January 13, 2000, and that Allen was the executor of his estate. On June 5, 2003, appellee issued and posted another nuisance determination, addressed to Jimmy V. Allen, executor of the estate of Merle Schultz. Still no action was taken to comply, and the property remained in the same condition.
 {¶ 4} On June 13, 2003, appellee filed a complaint in the Municipal Court of the City of Toledo, Housing Division, asking the court to declare the subject property a nuisance and issue an order for appellants to abate.
 {¶ 5} In a separate, unrelated proceeding in April 2004, the Lucas County Court of Common Pleas granted the Treasurer of Lucas County a judgment of foreclosure on the property in order to satisfy taxes, assessments and interest. That judgment found Schultz to be the owner of the property. It also ordered Allen in his individual capacity and Allen in his capacity as executor of Schultz's estate barred from having any interest or future interest in the property.
 {¶ 6} On April 7, 2004, appellee issued and mailed a "Final Notice of Condemnation and Demolition" to Jimmy V. Allen, executor of the estate of Merle Schultz. In the notice, appellee notified Allen that it intended to demolish the property if Allen did not contest the charges and remedy the nuisance. Between the initiation of proceedings but before trial, appellee proceeded to demolish the structure and remove all debris from the subject property, incurring costs in excess of $40,000.
 {¶ 7} At trial, the trial court permitted appellee to amend the relief requested in the complaint to include reimbursement of the costs expended abating the nuisance. The parties stipulated at the outset that (1) the deed to the property showed Merle Schultz as the owner and (2) Merle's Inc. was incorporated in Ohio in December 1997. The parties also stipulated to the judgment of foreclosure against Allen.
 {¶ 8} The trial court found Merle's Inc. liable as an "owner" of the property under the Toledo ordinance. It also found Allen individually liable, stating, "[T]here was an abundance of testimony and evidence to establish that Jimmy V. Allen is the controlling shareholder of the Corporation and was in control of the premises." It did not explicitly state that, in order to hold Allen individually liable, it had to pierce Merle's Inc.'s corporate form; however, it quoted the test for veil piercing from Belvedere Condominium Unit Owners' Assn. v. R.E. RoarkCos., Inc. (1993), 67 Ohio St.3d 274.
 {¶ 9} The trial court dismissed the estate of Merle Schultz as a party, finding appellee's claim against the estate time-barred pursuant to R.C. 2117.06(B). That statute, as it read prior to April 8, 2004, required all claims against an estate to be presented "within one year after the death of the decedent, whether of not the estate is released from administration or an executor or administrator is appointed during that one-year period." R.C. 2117.06(B). (amended 2004).
 {¶ 10} From that judgment of liability, appellants raise the following assignments of error:
 {¶ 11} "Assignment of Error No. 1: The trial court erred in entering judgment against appellants for failing to abate a nuisance, when they never received notice of their purported failure, which is a jurisdictional prerequisite to suit required by the nuisance abatement ordinance.
 {¶ 12} "Assignment of Error No. 2: The trial court erred in concluding that appellants are `owners' of the subject property, when the City failed to prove that either party had sufficient possession or control of the premises to establish the requisite `ownership' interest.
 {¶ 13} "Assignment of Error No. 3: The trial court erred in `piercing the corporate veil' and holding Van Allen liable for nuisance abatement as the alter ego of the corporate defendant, in the absence of evidence of excessive control of the corporation by Van Allen."
 {¶ 14} Appellants raise in their first assignment of error an issue which they failed to raise or argue in the trial court, and the trial court did not rule on this issue. Thus, we disregard it on appeal. In reBibb (1980), 70 Ohio App.2d 117, 118; Stores v. Cleveland (1975),41 Ohio St.2d 41. Appellants' first assignment of error is not well-taken.
 {¶ 15} In their second assignment of error, appellants argue that neither Merle's Inc. nor Allen as an individual is an "owner" of the property for purposes of the Toledo nuisance ordinance.
 {¶ 16} We review the trial court's ruling on the issue of ownership to determine whether competent, credible evidence exists in support of the ruling. "Judgments supported by some competent, credible evidence going to all essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." C.E. MorrisCo. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, syllabus.
 {¶ 17} It is axiomatic in Ohio that a court speaks only through its judgment entries. State ex rel. Industrial Commission v. Day (1940),136 Ohio St. 477, paragraph one of the syllabus. As stated above, although the trial court cited the test for when the corporate form may be disregarded to find a shareholder liable, Belvedere Condominium UnitOwners' Assn. v. R.E. Roark Cos., Inc. (1993), 67 Ohio St.3d 274, the trial court did not state a factual basis for its finding that Allen was liable in his personal capacity, or its basis for finding Merle's Inc. liable as an "owner." Regarding both appellants' liability, the opinion states in full, "[Allen and Merle's Inc.] are in violation of the Toledo Municipal Code by failing to abate the nuisance at 1102 Girard, Toledo, Ohio, as requested by ordered dated July 30, 1999, December 9, 2002, and June 5, 2003. * * * [T]he court finds that there is an abundance of testimony and evidence to establish that Jimmy V. Allen is the controlling shareholder of the Corporation and was in control of the premises. Section 1726.01(B) clearly defines the corporation and any person in control as the owner responsible for abating the nuisance."
 {¶ 18} According to this opinion, and given the stipulation that Merle Schultz was the record owner, we can infer that the trial court found (1) Merle's Inc. liable on the basis of its operation on or control of the premises, and (2) Allen individually liable as either (a) a shareholder of Merle's Inc. and liable under a veil-piercing test, or (b) having exercised such control over the property in his individual capacity as to be liable according to the Toledo ordinance.
 {¶ 19} The Toledo Municipal Code permits appellee to recover the costs of abating a public nuisance from the "owner" of the property on which the public nuisance occurs. Toledo Municipal Code, Section 1726.02
states,
 {¶ 20} "(a) Whenever the Director of Economic and Community Development or his/her designated representative determines that a public nuisance, as defined in Section 1726.01(a), exists and requires to be summarily abated because the public health, safety or welfare may be in immediate danger, the owner, as defined in Section 1726.01(b), of the property where the public nuisance exists or is found shall be provided written notice of the public nuisance and an order to abate the nuisance within seventy-two hours from the date of notice."
 {¶ 21} The ordinance permits the city of Toledo to abate a nuisance if the "owner" of the property fails to do so. If the city takes steps to abate the nuisance, it can recover the costs from the property owner. Section 1726.05 attaches liability for the cost of nuisance abatement to the "owner" of the property:
 {¶ 22} "(d) The owner, as defined in Section 1726.01(b), of the property where a public nuisance is found shall pay any and all costs incurred by the City in abating the public nuisance including all costs incurred by the City in identifying the nuisance and legal fees for the recovery of the nuisance abatement costs. If the owner of the property fails or refuses to pay the abatement costs, the costs may be assessed as a lien against the property and/or recouped via any other feasible method by the city provided by the Ohio Revised Code."
 {¶ 23} The crux of this appeal is whether the trial court property found appellants to be "owners" for the purpose of recovering abatement costs. Toledo Municipal Code Section 1726.01(b) defines an "owner" as:
 {¶ 24} "(1) Any person, corporation, partnership, limited partnership, limited liability partnership, or any shareholder, officer, trustee, partner, agent or employee of any of the above who has care, custody, control or charge of a premises or part thereof, has legal title to the premises, or has done any act to maintain or operate the premises.
 {¶ 25} "A. `Maintaining or operating the premises' shall include without limitation, entering into a public utility contract, obtaining a building or demolition permit or obtaining any other permit or license relating to the premises.
 {¶ 26} "(2) Any operator of a premises." Toledo Municipal Code, Section 1726.01.
 {¶ 27} As for what evidence may establish ownership, a non-contiguous section containing notice provisions, Toledo Municipal Code, Section1726.08(d)(2), states, "It is prima facie evidence that the owner of the premises is the person listed as such in the records of the Lucas County Auditor or Lucas County Recorder." Toledo Municipal Code, Section1726.08(d)(2).
 {¶ 28} Where an item constitutes prima facie evidence as set forth in a statute, the evidence is usually sufficient in itself to conclude an element of law established, unless evidence is demonstrated to the contrary. State v. Cummings (1971), 25 Ohio St.2d 219, paragraph one of the syllabus. "`Prima facie evidence,' referred to in statutory enactment, is such evidence as in the judgment of the law is sufficient to establish guilt and, if credit by the finder of facts, it is sufficient for that purpose, unless rebutted or the contrary proved." Id. at 220. The trier of fact has a duty to weigh prima facie evidence. "Prima facie evidence must be considered and weighed by the trier of the facts. After such reflection, the trier of facts may determine that the prima facie evidence, alone, is sufficient to establish a fact." Id. at paragraph two of the syllabus, emphasis in original. "Prima facie evidence of a fact is such as by judgment of law is sufficient, if not rebutted, to establish that fact." Fightmaster v. Mode (1928), 31 Ohio App. 273,287.
 {¶ 29} The parties stipulated that the deed to the property lists Merle Schultz as the owner. He is therefore the "owner of record." Cityof Springfield, Ohio v. O'Sesco, Inc. (December 28, 1994), 2d Dist. No. 94-CA-45, at 8. Thus, the trial court had before it prima facie evidence that Merle Schultz was the "owner" of the property pursuant to Toledo Municipal Code, Section 1726.08(d)(2). Appellee had the burden to present competent, credible evidence sufficient to rebut the prima facie evidence that Schultz is the owner pursuant to the ordinance.
 {¶ 30} First, we will consider whether competent, credible evidence supports a determination that Merle's Inc. was the "owner." At trial and in its brief, appellee made much of a picture of the demolished building, on the door of which the word "Merle's" was painted. This does not support a finding that Merle's Inc. owned the property. Evidence and testimony indicated that Schultz operated Merle's Automotive as a sole proprietorship until Allen incorporated Merle's Inc. in 1997. No evidence indicated to which entity the words referred, and no evidence indicated when the word was painted. Appellee's assertion that the picture shows the words "Merle's Incorporated" is simply false.
 {¶ 31} The parties stipulated to the introduction of Merle's Inc.'s articles of incorporation. Allen is listed as the incorporator. The articles do not list who owns shares in Merle's Inc. The subject property is not listed as an asset. The company was initially capitalized with $100. Appellee introduced no evidence that Schultz transferred the deed to the subject property from his individual ownership to the corporate entity of Merle's Inc., or that the subject property is an asset of Merle's Inc.
 {¶ 32} Appellee introduced a copy of a towing permit issued by the city of Toledo in 2000, to Merle's Inc. The permit application states, "Application is hereby made by the undersigned as the owner and/or operator of a garage, filling station, auto dealership service department and/or towing service * * *." Allen signed on behalf of Merle's Inc. Thus, according to this permit, Allen could be either the "owner" or the "operator" of Merle's Inc. Additionally, pursuant to Toledo Municipal Code, Section 1726.01(b)(1)(A), since Merle's Inc. obtained the permit, this would be evidence of "ownership," if the permit was obtained in relation to the subject property as required by that section. The permit application requires a listing of the business's address, and the subject property is not listed. Although it indicates Allen's involvement in Merle's Inc., the extent of his involvement is not apparent from this document; his testimony that he is the president of Merle's Inc. is consistent with his obtaining this permit. Moreover, since the subject property is not listed, it does not weigh in favor of finding that Merle's Inc. is affiliated with the subject property. Therefore, from the face of the permit, Merle's Inc. is not an "owner" of the property pursuant to the Toledo Municipal Code.
 {¶ 33} Appellee introduced a "junk auto list," which shows cars impounded by the city of Toledo and unclaimed. Allen signed the list on behalf of Merle's Inc., with a business address other than the subject property; no address indicates where the vehicles are located appears on the document. Appellee did not establish, through testimony or otherwise, that the cars appearing on the list were towed by Merle's Inc. to the subject property; the list does not establish that Merle's Inc. is affiliated with the subject property.
 {¶ 34} Appellee also elicited testimony from Allen that he had been present when Toledo police officers wanted to inspect the subject property in 1999, for reasons unrelated to this proceeding. A witness for appellee, Toledo Police Officer Kathy Trautman, testified that in May 1999, she had occasion to inspect vehicles towed by Merle's Inc. She had initially gone to the main business address listed for Merle's Inc. and did inspect some vehicles there. She testified that she was then taken by Allen to the subject property and inspected other cards towed by Merle's Inc. Trautman was under the assumption that the subject property was therefore being used as an "auxiliary" site of Merle's Inc., but no documentary evidence was produced in support of her assumption.
 {¶ 35} Appellee also elicited testimony from Allen that he had permitted Toledo police officers to search the subject property in 2001, for reasons unrelated to this case. Requesting a reason why Allen had unlocked the property for a search, appellee asked, "Is that because you had the right to access that building whenever you felt you had the right to access?" Appellant answered, "Well, as Merle's Automotive, Inc., yeah." This is the only testimony indicated that Merle's Inc. had "control" over the property — but this does not conclusively establish that Merle's Inc. was the "owner" for purposes of establishing liability pursuant to the ordinance, nor does it establish that Allen was acting as an "owner" of either Merle's Inc. or the property. Countervailing evidence includes Allen's testimony that someone else was renting the property and storing automobiles on it; appellant only possessed a key to it; the tenant had "started a deal" with Schultz, whereby Schultz "was going to sell it to [the tenant]." Allen's single statement that he could access the subject property when he as acting on behalf of Merle's Inc. is insufficient to counter the weight of the prima facie evidence establishing that Schultz individually owned the subject property; regardless, the single statement is insufficient to render Merle's Inc. an "owner" for purposes of liability.
 {¶ 36} Other evidence contradicts a conclusion that Merle's Inc. operated on the subject property after Merle's Automotive (the sole proprietorship) discontinued use. Allen testified that Schultz ran Merle's Automotive (the sole proprietorship) as an auto repair business on the subject property prior to 1997; Merle's Inc. was subsequently incorporated and Allen became the manager of that entity. However, Allen testified that Merle's Inc. had not used the subject property as part of its towing operations since approximately 1999.
 {¶ 37} Because we find that the trial court had insufficient evidence to find that Merle's Inc. was the "owner" of the property in rebuttal of the presumption that Merle Schultz was the "owner" pursuant to the public nuisance ordinance, we find appellant's second assignment of error well-taken with respect to Merle's Inc.
 {¶ 38} As for Allen's individual "ownership" of the property for the purposes of the Toledo ordinance, there is also insufficient evidence to establish this finding. In its opinion, the trial court states, "The Corporation was established by Defendant Jimmy V. Allen in 1997 and he is sole shareholder, according to his testimony. * * * Jimmy V. Allen is the controlling shareholder of the Corporation and was in control of the premises." Our search of the transcript, however, only revealed the following exchanges during Allen's cross-examination:
 {¶ 39} "Q. And so from '97 on — now did you own the stock in the corporation or did you just operate it?
 {¶ 40} "A. I'm not sure, I might have been just a shareholder. I'm not sure.
 {¶ 41} "Q. So you were at least a shareholder in the corporation?
 {¶ 42} "A. I believe so, yes.
• * *
 {¶ 43} "Q. Now, you know in a corporation you have stock that's issued and each person who owns a share of stock owns a part of the corporation?
 {¶ 44} "A. Yes.
 {¶ 45} "Q. Do you recall how much of the stock in the corporation you owned?
 {¶ 46} "A. No.
 {¶ 47} "Q. You don't know?
 {¶ 48} "A. No, I don't.
• * *
 {¶ 49} "Q. Do you know how many stockholders there were in the corporation?
 {¶ 50} "A. No.
 {¶ 51} "Q. What was the point of incorporating if you didn't know any of these things?
 {¶ 52} "A. If Merle [Schultz] got bad and passed away, that we'd keep the towing license for the City."
 {¶ 53} Also, an insufficient amount of competent, credible evidence was introduced to establish that Allen "controlled" the subject property in a capacity other than executor of Schultz's estate and overcome the prima facie evidence that Schultz owned the subject property. For that reason, appellants' second assignment of error is well-taken with respect to Allen.
 {¶ 54} Regarding appellants' third assignment of error, because Merle's Inc. is not the owner, it logically follows that Allen cannot be held responsible as an owner or shareholder of Merle's Inc. Moreover, no competent, credible evidence was present to establish the elements necessary to "pierce the corporate veil" to find shareholder liability — not to mention a complete absence of evidence as to who owned shares in Merle's Inc. A corporation's limited liability shield cannot be disregarded in order to find the shareholders liable if the corporation is not liable in the first instance, nor can an individual be held liable through veil-piercing if there is no evidence indicating the individual's shareholder status. The Ohio Constitution and Ohio case law is clear on this point. Section 3, Article XIII of the Ohio Constitution; BelvedereCondominium Unit Owners' Assn. v. R.E. Roark Cos., Inc. (1993),67 Ohio St.3d 274, 287. There must also be some proof that the corporation was used as a "cloak for fraud or illegality." E.S. PrestonAssoc., Inc. v. Preston (1986), 24 Ohio St.3d 7, 11. The trial court's opinion did not indicate a basis for concluding that Allen used Merle's Inc. to perpetrate a fraud or illegality, and our review of the record leads us to conclude that appellee advanced no evidence of fraud. The record does not contain evidence supporting a conclusion that the remaining prongs of the Belvedere test were satisfied.
 {¶ 55} As for Allen's liability as an employee of Merle's Inc., Allen testified that he is the president of Merle's Inc., and that he manages Merle's Inc. However, Allen's relationship to Merle's Inc. alone will not render him personally liable. Schaefer v. D.J. Produce, Inc. (1978),62 Ohio App.2d 53, 58. In order to hold an executive or an officer of a corporation, aside from shareholder status, liable for an act committed by the corporation, more evidence is required — generally evidence that the officer "specifically directed the particular act to be done, orparticipated, or co-operated therein." Young v. Featherstone Motors, Inc.
(1954), 97 Ohio App. 158, 171 (emphasis in original; internal citations omitted). There is no evidence that Allen, in his individual capacity as an officer of Merle's Inc., maintained a nuisance on the property.
 {¶ 56} Because we conclude that no competent, credible evidence supports the trial court's determination that Merle's Inc. or Allen, either in his individual capacity or as a shareholder or officer of Merle's Inc., were "owners" as defined by the Toledo ordinance, appellee was not entitled to have judgment entered in its favor. Accordingly, the judgment of the Toledo Municipal Court, Housing Division, is reversed. Pursuant to App.R. 12(C), judgment is hereby entered in favor of appellants, and appellee's claims against appellants are dismissed. Costs are assessed to appellee pursuant to App.R. 24.
Judgment Reversed.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Singer, P.J., Skow, J., Parish, J.
[1] We note that during trial, appellant orally asked the trial court to correct his name as it appeared on the caption, from "Jimmy V. Allen" to "Jimmy Van Allen" and we follow the trial court's captioning for consistency.
[2] Jimmy V. Allen, in his capacity as Executor of the Estate of Merle Schultz, is also listed on the Notice of Appeal. However, the trial court dismissed the estate of Merle Schultz as a party, finding it not liable. Appellee did not file a cross-appeal asserting that dismissal as an assignment of error. Therefore, only Jimmy V. Allen in his individual capacity and Merle's Automotive, Inc. are proper parties to this appeal. App.R. 3(C).