OPINION
{¶ 1} Plaintiffs-appellants, Patricia Walter and Peter von Meister, appeal a decision of the Warren County Court of Common Pleas in a bench trial involving real estate appellants purchased from defendant-appellees, Philip and Maria Agoston.
 {¶ 2} Early in 1997, appellants became interested in residential property appellees had listed for sale. Appellants arranged for a whole house inspection of the property. The inspector noted in his report that "[t]he retaining wall on the west side of the house is showing signs of settlement as the hill below it slowly washes out. (repairs will be needed to maintain the system)." The inspector's comments referred to a built-up embankment and driveway area outside the garage of the house. The house was built on a slope and an embankment area was created in order to access the garage and to create a turn around area in the driveway.
 {¶ 3} Appellants raised the embankment issue with appellees, who responded that they did not feel that there was any chance of the hill sliding and that all it needed was maintenance. After further discussions between the parties, appellees agreed to inclusion of a clause in the sales contract that read: "Seller to warranty stability of the embankment and driveway apron for a period of five years from closing date."
 {¶ 4} In March 1999, appellants felt that there was evidence that the embankment area was failing and contacted appellees regarding the warranty. Philip Agoston looked at the area and told appellants that he felt it was not failing and simply required preventative maintenance. The parties had several conversations about the area over the next few months. Appellants obtained an estimate from a landscaper for $11,000 to build a retaining wall. Appellees disagreed with the landscaper's assessment of the situation. Appellants then hired an engineer to evaluate the condition of the embankment area. The engineer felt that there were compaction problems with the original fill used to create the area. Appellants hired an architect to look at the area and propose a solution. The architect recommended construction of a retaining wall. Estimates for this type of wall ranged from $24,225.60 to $35,400 for the project. Appellees refused to pay for the cost of a retaining wall.
 {¶ 5} Appellants filed a complaint against appellees in the Warren County Court of Common Pleas, alleging failure to abide by the terms of the contract warranty. Appellants also included claims against the contractor who built the house, who then filed a third-party complaint against the subcontractor who performed the fill work. After a bench trial, the trial court found in favor of appellees on the claims involving the embankment area.
 {¶ 6} Appellants now appeal the trial court's decision and raise the following single assignment of error for our review:
 {¶ 7} "The trial court erred to the prejudice of plaintiffs-appellants by failing to apply the correct standards for the interpretation and enforcement of written contracts."
 {¶ 8} Appellants argue that the terms of the contract are clear and unambiguous and the trial court erred by failing to apply the plain meaning of the word "stability." Appellants also argue that intent of the parties was not carried out and that the trial court's determination that the contract wording be construed against them is contrary to law and arbitrary.
 {¶ 9} The primary issue in this case involved interpretation of the term "stability" as used in the warranty provision of the contract. The trial court discussed interpretation of the contract in its decision as follows:
 {¶ 10} "These defendants claim that they intended merely that the driveway apron and embankment would not collapse to the point that the plaintiffs would no longer have a safe and usable driveway. We reject this interpretation of the warranty. On the other hand, considering all of the evidence bearing on this point, we conclude that the plaintiffs and the defendants did not mean that defendants would guarantee against any and all soil erosion, gravel dissipation and minor soil displacement or shifting."
 {¶ 11} The trial court further stated, "[w]e also note that the warranty document was prepared at the insistence and the direction of plaintiffs. Its language must be construed accordingly." The trial court determined that the appellants' claims "as to the erosion, soil shifting, etc. that took place during the five-year period are greatly exaggerated." The court concluded that the evidence failed to show by a preponderance of the evidence that the changes in the driveway apron and embankment area constituted a lack of stability.
 {¶ 12} Contracts are to be interpreted so as to carry out the intent of the parties, as that intent is evidenced by the contractual language. Skivolocki v. E. Ohio Gas Co. (1974),38 Ohio St.2d 244. Where the terms of a contract are clear and unambiguous, a court cannot find a different intent from that expressed in the contract. E.S. Preston Assoc., Inc. v. Preston
(1986), 24 Ohio St.3d 7, 10. It is a fundamental principle of contract interpretation in Ohio that unclear language in a contract will be interpreted against the drafter. McKay MachineCo. v. Rodman (1967), 11 Ohio St.2d 77, 80. The meaning of terms used in a contract, if ambiguous, is a question of fact and will not be overturned on appeal absent a showing that the trial court abused its discretion. Ohio Historical Society v. GeneralMaintenance Engineering Co. (1989), 65 Ohio App.3d 139. Contract terms are ambiguous where the language is susceptible to two or more reasonable interpretations. U.S. Fidelity andGuaranty Co. v. St. Elizabeth Med. Ctr. (1998),129 Ohio App.3d 45.
 {¶ 13} In this case, the trial court did not state whether it found the language of the contract ambiguous. Although not specifically stating its conclusion, the trial court apparently adopted a common, plain meaning definition of "stability" when it rejected both appellees proposed interpretation of complete collapse, along with rejecting a definition that that any movement whatsoever constituted instability. We find no error in the trial court's interpretation of the term "stability" because under either analysis, the trial court ultimately adopted a plain meaning definition of the word. We further find no error in the trial court's statement that because appellants drafted the clause it should be "construed accordingly" because as drafters of the provision, the law provides that any ambiguity should be construed against them.
 {¶ 14} Appellants argument that the trial court failed to apply the plain and ordinary meaning of "stable" appears to be based on their conclusion that uncontroverted evidence established the embankment area was unstable. Appellants presented the testimony of Mark Carlson, an engineer who visited the property to examine the slope instability issue. He testified that there were problems with the fill and compaction. Appellants also presented the evidence of Thomas Dues, an architect, who found that the embankment area was failing and was unstable.
 {¶ 15} However, appellees presented evidence to the contrary. Patrick Noll, a geotechnical engineer, testified that he examined the property and did not see any evidence that suggests that the hillside is unstable. Noll disagreed with the manner in which the information in Carlson's report was obtained and found that it was not accurate. He further disagreed with the interpretation of the data in Carlson's report and the manner in which testing was performed. Noll completely disagreed with Carlson's conclusion that the soil was not compacted properly in light of the residential application. Appellees also both testified, along with Louis Agoston, who built the house, that the condition of the property is the same as when it was sold and used pictures to support their claims.
 {¶ 16} As a reviewing court, we must defer to the trial court as the finder of fact, because the trial court is in the best position to weigh the credibility of the witnesses. Seasons CoalCo., Inc. v. Cleveland (1984), 10 Ohio St.3d 77, 80. The decision of that trier of fact will not be reversed as being against the manifest weight of the evidence as long as it is supported by some competent, credible evidence going to each of the essential elements of the case. C.E. Morris Co. v. FoleyConstr. Co. (1978), 54 Ohio St.2d 279, syllabus.
 {¶ 17} Given that appellants' evidence was in fact controverted, we find that there is sufficient credible evidence to support the trial court's conclusions. Thus, we find no error in the court's determination that appellants failed to prove by a preponderance of the evidence that the changes in the embankment area constituted a lack of stability. Appellants' assignment of error is overruled.
 {¶ 18} Judgment affirmed.
Young, P.J., and Powell, J., concur.