[Cite as *Jack F. Neff Sand & Gravel, Inc. v. Great Lakes Crushing, Ltd.*, 2014-Ohio-2875.]

# IN THE COURT OF APPEALS

## ELEVENTH APPELLATE DISTRICT

## LAKE COUNTY, OHIO

| | | |
|---|---|---|
| JACK F. NEFF SAND & GRAVEL, INC., n.k.a. JOHN F. NEFF, INC., et al., | : | **O P I N I O N** |
| | : | |
| Plaintiffs-Appellants/ Cross-Appellees, | : | **CASE NO. 2012-L-145** |
| | : | |
| - vs - | : | |
| | : | |
| GREAT LAKES CRUSHING, LTD., et al., | : | |
| | : | |
| Defendant-Appellee/ Cross-Appellant. | : | |

Civil Appeal from the Lake County Court of Common Pleas, Case No. 11 CV 000003.

Judgment: Affirmed.

*Robert P. DeMarco*, DeMarco & Triscaro, Ltd., 30505 Bainbridge Road, Suite 110, Solon, OH 44139 (For Plaintiffs-Appellants/Cross-Appellees).

*Richard N. Selby, II* and *Keith R. Kraus*, Dworken & Bernstein Co., L.P.A.60 South Park Place, Painesville, OH 44077 (For Defendant-Appellee/Cross-Appellant).

TIMOTHY P. CANNON, P.J.

{¶1} Appellants/cross-appellees, Jack F. Neff Sand & Gravel Inc., n.k.a. John F. Neff, Inc. ("JFN"), and JoAnn Neff as Executrix of the Estate of John F. Neff, appeal from the Lake County Court of Common Pleas' June 29, 2012 judgment awarding $462,000 to appellee/cross-appellant, Great Lakes Crushing, Ltd. ("GLC"). The judgment was based on jury findings that JFN breached a contract with GLC and that JFN and John Neff ("Mr. Neff") converted property belonging to GLC. JFN was a

concrete recycling business located in Wickliffe, Ohio. Mr. Neff was president of JFN and named as one of the plaintiffs when suit was filed. GLC is also in the business of concrete recycling. Defendant Mark Belich ("Mr. Belich") is the managing member of GLC.

{¶2} According to the complaint, JFN entered into a license agreement with GLC, which allowed GLC to perform concrete recycling operations on property owned by the Trustees of the Lucinda Neff Estate Distribution Trust Agreement ("the Trustees"). Pursuant to the Trust Agreement, Mr. Neff was agent for the Trustees in matters involving selling or renting the property. Following an initial term of three months, which ran from October 1, 2005, until January 1, 2006, the parties continued to do business on a month-to-month basis until May 2007. At that time, GLC and JFN entered into a written licensing agreement which granted GLC use of the property for an additional one year. The contract was signed on May 15, 2007. By its terms, the contract was made retroactive to May 1, 2007, and was to end on April 30, 2008.

{¶3} In the spring of 2008, the parties again entered into negotiations regarding terms of renewal. Although a new contract was not reached until July 2008, two months after the previous contract expired, the parties continued regular business operations in the interim. Once they agreed to terms, the written agreement was again made retroactive to May 1, 2008.

{¶4} The July 2008 contract, which is the subject of this litigation, included the following terms: (1) the contract term was one year, retroactive to May 1, 2008, ending on April 30, 2009; (2) GLC had the option to renew the contract by written notice at least 60 days prior to the end of the term; (3) GLC had an exclusive right to conduct concrete recycling operations on the premises and to store materials on the premises; (4) GLC

2

had a duty to remove all materials, saleable or not, at the end of the term; (5) should GLC fail to remove its materials at the end of the term, JFN had the right to remove GLC's materials and to charge GLC the costs of removal; (6) GLC was to pay a royalty to JFN equal to $3.00 per ton on all materials "crushed and/or sold" on the premises; (7) advance estimates to be applied to the annual royalty obligation were payable in ten monthly installments of $10,000 each; (8) on April 30, 2009, the parties were to determine the actual royalty obligation from the preceding year, and if the amount due exceeded the $100,000 paid in monthly installments, GLC was to pay the excess in a lump sum.

{¶5}   Negotiations for another renewal began in March 2009.  The parties had a dispute regarding trucks that had exited the site without passing over the scale used to calculate royalties.  JFN argued royalty payments were due for the material on these trucks.  GLC argued trucks that bypassed the scales were either empty or carrying materials belonging to GLC to be used by GLC in its own work; therefore, the trucks were not carrying materials "crushed and/or sold on site."  JFN estimated GLC owed $90,000 in royalties due and demanded payment.  A March 18, 2009 letter from JFN's counsel to Mr. Belich indicated that continued business would require a new contract and payment of the royalties JFN claimed were due.

{¶6}   The process of computing the actual royalties due was referred to by the parties as "reconciliation."  At the end of the term, Jean Glavic ("Ms. Glavic") prepared a "tally sheet" which computed the total royalties due for the year at $206,758.49.  Ms. Glavic is employed by Mr. Neff's son, David, who runs a landscaping business from an office he shared with his father.  Ms. Glavic testified that she often undertook small administrative tasks for Mr. Neff.  The purpose of the tally sheet prepared by Ms. Glavic

3

was to facilitate reconciliation at the end of each contract term. Pursuant to the reconciliation, JFN's calculations showed that GLC owed an additional $106,758.49. GLC disagreed with the calculations but agreed it owed JFN an additional $25,000.

{¶7} The July 2008 contract was to lapse on April 30, 2009; however, the parties agreed at trial that a one-month extension had been negotiated in March 2009. The extension agreement was not reduced to writing, and the parties dispute the purpose of the extension. Mr. Belich testified the extension was made with the understanding that a new contract would be forthcoming. Mr. Neff's deposition, which was read into evidence, contended the purpose of the extension was to provide GLC adequate time to remove its equipment and materials. GLC continued normal business operations during May 2009. In a May 29, 2009 letter to Mr. Belich, entitled "Termination of License Agreement," counsel for JFN and Mr. Neff wrote that the agreement would lapse on May 31, 2009, and that GLC personnel would be subjected to prosecution for trespass if found on the premises thereafter. At the end of May 2009, JFN and Mr. Neff locked GLC out of the premises, and negotiations over the recovery of GLC's materials began.

{¶8} In July 2009, JFN sued GLC in the Lake County Common Pleas Court; the suit was assigned case No. 09 CV 002171. While the case was pending, on July 16, 2010, GLC was told it would be permitted to remove its materials. However, following a dispute over the order in which materials were being removed and whether royalties must be paid on materials removed, JFN permanently locked GLC out on September 1, 2010. Various materials belonging to GLC—with an alleged estimated value of approximately $500,000—remained on the premises.

4

{¶9} On October 26, 2010, GLC filed a motion to dismiss case No. 09 CV 002171, alleging JFN was no longer a corporation in good standing. On November 3, 2010, the parties filed a stipulation of dismissal of all claims without prejudice. JFN's articles of incorporation were subsequently reinstated.

{¶10} The action was re-filed on January 3, 2011. In the re-filed complaint, JFN and Mr. Neff were both listed as plaintiffs, and GLC was listed as the sole defendant. An amended complaint was filed on February 15, 2011, and listed two additional defendants: Mr. Belich and Erik L. Walter ("Attorney Walter"), GLC's attorney in the previous action. The amended complaint included seven counts: Count 1 alleged breach of contract on the part of GLC; Counts 2 and 3 alleged civil theft and conversion against GLC and Mr. Belich; Count 4 sought punitive damages from GLC and Mr. Belich; Counts 5, 6, and 7 alleged deceptive trade practices in violation of R.C. 4165.02, common law trade name infringement, and abuse of process, respectively, against Mr. Belich and Attorney Walters. Summary judgment was subsequently granted in favor of Attorney Walters on Counts 5, 6, and 7 and in favor of Mr. Belich on Counts 5 and 7.

{¶11} On March 14, 2011, GLC filed an answer and counterclaim. The counterclaim included eight counts: Count 1 alleged JFN breached its contract with GLC; Count 3 alleged JFN and Mr. Neff converted GLC's property; Counts 2, 4, 5, 6, 7, and 8 were voluntarily dismissed by GLC.

{¶12} Mr. Neff died on September 25, 2011; his death was suggested on the record on October 4, 2011. On December 29, 2011, JFN filed a motion to substitute JoAnn Neff, executrix of Mr. Neff's estate, as a party in her personal and representative capacity. On March 9, 2012, the trial court granted the motion as to Mrs. Neff in her representative capacity as executrix of Mr. Neff's estate ("the estate").

5

**{¶13}** The matter proceeded to trial on June 12, 2012. Count 6 of the amended complaint, against Mr. Belich, was voluntarily dismissed during trial. Counts 2, 3, and 4 of the amended complaint were disposed of by directed verdicts in favor of GLC and Mr. Belich. Count 1 of the amended complaint (JFN's breach of contract claim against GLC) and Counts 1 and 3 of GLC's counterclaim (breach of contract and conversion) were the only counts considered by the jury.

**{¶14}** Prior to trial, appellants filed a motion in limine seeking to exclude testimony regarding verbal statements allegedly made by Mr. Neff to Mr. Belich. The trial court granted the motion in part and overruled it in part: it permitted GLC to use such statements to defend against allegations that GLC breached its contract with JFN, but not to prosecute its own claims for breach of a verbal contract modification and conversion. The jury was later instructed on the limited use of the statements. Counsel for appellants objected to any use of such statements on the basis that the statements were hearsay. In addition, at the close of evidence, GLC requested a punitive damages instruction with regard to its conversion claim. The trial court overruled that request.

**{¶15}** On June 18, 2012, the jury returned a verdict in favor of GLC on appellants' breach of contract claim and in favor of GLC on its breach of contract and conversion counterclaims. The jury awarded compensatory damages in the amount of $462,000 to GLC against appellants, jointly and severally.

**{¶16}** On June 25, 2012, GLC filed a motion for prejudgment interest pursuant to R.C. 1343.03(A) and (C). On June 26, 2012, appellants filed a motion for judgment notwithstanding the verdict ("JNOV"). Appellants made the following arguments: the jury could only conclude GLC had breached the contract; JFN was not obligated under the contract to permit GLC to enter the premises after the contract expired; there was

6

no taking of property to justify the verdict for conversion; and the verdict of conversion entered against Mr. Neff in his individual capacity was not supported by any evidence that Mr. Neff should be held individually liable. While those motions were pending, JFN and the estate filed an appeal with this court, which was dismissed for lack of a final, appealable order. *Jack F. Neff Sand & Gravel, Inc. v. Great Lakes Crushing, Ltd.*, 11th Dist. Lake No. 2012-L-085, 2012-Ohio-4894.

{¶17} On November 21, 2012, the trial court overruled GLC's motion for prejudgment interest. Noting the contract did not provide for any money to be paid to GLC and that the issues were contested in good faith, the trial court held GLC was entitled to interest only from the date of judgment, June 15, 2012, pursuant to R.C. 1343.03(B). On the same date, the trial court overruled appellants' motion for JNOV. It found that evidence of a course of dealings was presented and tended to show GLC had been permitted to remain on the premises during renegotiation periods despite the absence of a written extension agreement between the parties. Further, the trial court found a sufficient basis for the jury to determine that Mr. Neff was acting in his personal capacity when he excluded GLC from the premises, to wit: Mr. Neff was the administrator for the trust that owned the property; Mr. Neff's deposition testimony indicated he had excluded GLC from the premises; and a letter from Mr. Neff's counsel indicated GLC personnel would need his permission to enter the property after May 31, 2009.

{¶18} Appellants, JFN and the estate, filed a timely notice of appeal and assert five assignments of error. Appellee, GLC, filed a cross-appeal and asserts two assignments of error.

{¶19} Appellants' first assignment of error states:

7

{¶20} "The trial court committed prejudicial error by allowing Defendants-Appellees to introduce evidence of alleged verbal agreements between Defendants-Appellees and decedent."

{¶21} Appellants argue the trial court erred in admitting oral statements of Mr. Neff, who was deceased at the time of trial, regarding the existence of an oral extension agreement between Mr. Neff and Mr. Belich. The trial court found admissible "statements of the deceased that are used by [GLC] in defense as opposed to an offense." GLC was thus permitted to offer statements Mr. Neff made to Mr. Belich in order to defend against the breach of contract claim prosecuted by appellants. However, GLC was not permitted to use Mr. Neff's statements to prosecute its own counterclaims against appellants.

{¶22} Appellants raise two issues under this assignment of error. First, they assert that Mr. Neff's statements were inadmissible hearsay, governed by the hearsay exception found in Evid.R. 804(B)(5), and should have been excluded. In response, GLC asserts that the admitted statements were not hearsay by definition, pursuant to Evid.R. 801(D)(2).

{¶23} "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). Although we apply an abuse of discretion standard to evidentiary rulings on matters such as relevancy and the admission of expert testimony, the trial court does not have discretion to admit hearsay "except as otherwise provided by the Constitution of the United States, by the Constitution of the State of Ohio, by statute enacted by the General Assembly not in conflict with a rule of the Supreme Court of Ohio, by these rules, or by other rules prescribed by the Supreme Court of

8

Ohio." Evid.R. 802. *See also State v. DeMarco*, 31 Ohio St.3d 191, 195 (1987). Therefore, we apply a de novo review to determine whether the testimony here constitutes hearsay or non-hearsay. *See John Soliday Fin. Group, LLC v. Pittenger*, 190 Ohio App.3d 145, 150 (5th Dist.2010).

**{¶24}** Evid.R. 801(D)(2) states, in relevant part, that admissions by a party-opponent are not hearsay if "[t]he statement is offered against a party and is (a) the party's own statement, in either an individual or a representative capacity, or * * * (d) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship[.]"

**{¶25}** Appellants argue that Evid.R. 801(D)(2) does not apply because Mr. Neff was deceased at the time of trial and because the estate was substituted as a party. Appellants cite to *Covert v. Covert*, 3rd Dist. Seneca No. 13-84-33, 1985 Ohio App. LEXIS 9262 (Nov. 6, 1985), in support of their argument that Evid.R. 801(D)(2) does not apply to statements of a decedent. The *Covert* Court noted that the Staff Note to Evid.R. 801(D)(2)(a) states: "'Problems of trustworthiness are not critical in this class of admission since the opposing party controls the decision to introduce the statement and *party-declarant will be in court* to refute any unfavorable impact of the statement.'" *Id.* at *4-5 (emphasis added). This argument does not have merit, however, because subsection (a) does not apply to the case sub judice. The out-of-court statement was not made by JFN, the party against whom it was offered, but by Mr. Neff as JFN's agent.

**{¶26}** Subsection (d), pertaining to a party's "agent or servant," is the relevant portion of the rule. The admissible out-of-court statements allegedly made by Mr. Neff were offered by Mr. Belich during his testimony. They were offered against JFN, a

9

named plaintiff in the case and a party to the contract at issue. At the time Mr. Neff allegedly made these statements, he was president of JFN. Further, the alleged statements concerned the contract between JFN and GLC, a matter "within the scope of the agency" that existed between Mr. Neff and JFN.

{¶27} Nothing in subsection (d) or the accompanying Staff Note suggests its application is limited to the living agents of the party against whom a statement is introduced. Nor does it mention the declarant's presence in court. To the contrary, the Staff Note states that the statements of a party's agent made in the course of the agency relationship and concerning matters relating to the relationship are admissible against the party. The Ohio Supreme Court has also recognized the application of this rule in similar circumstances. *See Eberly v. A-P Controls, Inc.*, 61 Ohio St.3d 27, 30-31 (1991) (where statements made by the decedent, as sole owner and president of the incorporated defendant, were admitted by the plaintiff throughout trial as non-hearsay, pursuant to Evid.R. 801(D)(2)).

{¶28} Accordingly, the testimony offered by Mr. Belich was not hearsay and, thus, was admissible. It is therefore unnecessary to analyze the statements under the hearsay exception found in Evid.R. 804(B)(5). Appellants' first argument is not well taken.

{¶29} We recognize the potential for prejudice to the party against whom testimony of a deceased "agent or servant" is offered. However, Evid.R. 403(A) permits the trial court, in its role as gate-keeper, to consider whether the probative value of otherwise admissible evidence is "substantially outweighed by the danger of unfair prejudice[.]" Here, the trial court astutely recognized that Mr. Neff's version of events was memorialized in his deposition, which was read to the jury. It also limited GLC's

10

use of the deceased "agent or servant" statement to defending the claim against it, not in prosecuting its own cause of action.

{¶30} Appellants next object to the admission of Mr. Neff's statements on the grounds that the agreement between the parties contained a "no oral modifications clause." No such clause appears in the agreement. The language to which appellants direct this court states:

> If Licensee is not in breach of any of the terms and conditions of this agreement, he shall have the option to renew this agreement for an additional one year period, under terms and conditions to be negotiated by the parties. Any such optional renewal shall be in writing directed to Licensor no less than 60 days prior to the expiration of this agreement.

This language grants GLC an option to renew the contract upon 60 days written notice. Although it requires the option be exercised in writing, if at all, it does not preclude the parties from orally modifying the contract. This argument is also not well taken.

{¶31} Appellants' first assignment of error is without merit.

{¶32} Appellants' second and third assignments of error both concern the trial court denying appellants' motion for a directed verdict on GLC's counterclaims for breach of contract and conversion.

{¶33} A trial court must grant a motion for a directed verdict if, after construing the evidence in a light most favorable to the non-moving party, it concludes that "reasonable minds could come to but one conclusion upon the evidence submitted," a conclusion adverse to the non-moving party. Civ.R. 50(A)(4). "Because a directed verdict only tests the sufficiency of the evidence, it presents a question of law that appellate courts review de novo." *Jarupan v. Hanna*, 173 Ohio App.3d 284, 291 (10th Dist.2007) (citation omitted).

11

**{¶34}** Appellants' second assignment of error states:

**{¶35}** "The trial court committed prejudicial error by overruling plaintiffs-appellants' Motion for a Directed Verdict on defendants-appellees' counterclaim for breach of contract."

**{¶36}** The contract term at issue states: "[a]t the end of the term, it shall be the duty of the licensee [GLC] to remove all materials saleable or not." Appellants maintain this clause required GLC to have completed removal of its materials before the contract term expired. GLC counters that "*at* the end of the term" is not synonymous with "*by* the end of the term" and contends that the clause contemplates GLC having some reasonable period of time after the contract expired to remove its materials.

**{¶37}** Where a contract term is ambiguous, its meaning is a question of fact. *Walter v. Agoston*, 12th Dist. Warren No. CA2003-03-039, 2004-Ohio-2488, ¶12. "Contract terms are ambiguous where the language is susceptible to two or more reasonable interpretations." *Id.* Furthermore, "[i]t is a fundamental principle of contract interpretation in Ohio that unclear language in a contract will be interpreted against the drafter." *Id.*, citing *McKay Machine Co. v. Rodman*, 11 Ohio St.2d 77, 80 (1967). It does not appear to be in dispute that counsel for JFN and Mr. Neff drafted the agreement at issue.

**{¶38}** The phrase, "at the end of the term," is ambiguous. It could mean either (1) GLC was required to remove its materials by the time the contract expired or, (2) once the contract expired, GLC was required to remove its materials within a reasonable time. Evidence was presented that GLC had not been required to remove its equipment and materials when the previous agreement expired. Furthermore, on at least one occasion when a previous contract expired, Mr. Neff apparently indicated to

his counsel that GLC would require approximately 30 days to vacate the premises—a fact Mr. Neff's counsel acknowledged in a letter to Mr. Belich.

{¶39} Construing this evidence in a light most favorable to GLC, a reasonable trier of fact could conclude that GLC should have been given access to the premises within a reasonable amount of time after the contract term expired for the purpose of removing its materials. The trial court did not err in denying appellants' motion for a directed verdict with regard to GLC's counterclaim for breach of contract.

{¶40} Appellants' second assignment of error is without merit.

{¶41} Appellants' third assignment of error states:

{¶42} "The trial court erred by overruling plaintiff-appellants' Motion for a Directed Verdict on defendants-appellees' conversion counterclaim."

{¶43} "The three basic elements of conversion are: '(1) plaintiff's ownership or right to possession of the property at the time of the conversion; (2) defendant's conversion by a wrongful act or disposition of plaintiff's property rights; and (3) damages.'" *Perez Bar & Grill v. Schneider*, 9th Dist. Lorain No. 11CA010076, 2012-Ohio-5820, ¶10, quoting *Keybank Natl. Assn. v. Guarnieri & Secrest P.L.L.*, 7th Dist. Columbiana No. 07 CO 46, 2008-Ohio-6362, ¶15.

{¶44} Appellants neither dispute GLC's ownership of the materials in question nor do they attack GLC's claim to damages. Appellants argue they had no contractual obligation to permit GLC access to the premises after the contract term expired and therefore did not breach the contract or wrongfully exercise dominion over GLC's property. Appellants further argue their actions were consistent with GLC's property rights because GLC was given several opportunities to recover its property. Thus, appellants argue they committed no wrongful act.

13

**{¶45}** GLC argues the contract required appellants to permit GLC access to the premises following expiration of the contract for the purpose of removing the materials GLC had stored on the premises. Thus, GLC's position is that appellants breached the contract and wrongfully took control of property belonging to GLC. GLC further argues that an opportunity to recover its property approximately one year later should not defeat its conversion counterclaim.

**{¶46}** Construing the evidence in a light most favorable to GLC, a reasonable trier of fact could find appellant's exclusion of GLC from the premises was contrary to the prior course of dealings between the parties and a breach of the contract, constituting a wrongful act for the purposes of conversion. GLC presented evidence that it owned construction materials of significant value, which it was not permitted to remove from the premises; that those materials lost value as they sat unused; and that GLC was forced to expend money to purchase replacement materials. Thus, GLC presented evidence on each element of conversion, and a reasonable trier of fact could determine appellants converted GLC's property. Though appellants gave GLC the opportunity to remove its property the following summer, GLC contended the damage had largely been done and GLC was never able to remove all of its property.

**{¶47}** Appellants' third assignment of error is thus without merit.

**{¶48}** Appellants' fourth and fifth assignments of error concern the trial court's ruling on appellants' JNOV motion. We review de novo a trial court's ruling on a motion for JNOV, as it presents a question of law. *Seese v. Admr., Bureau of Workers' Comp.*, 11th Dist. Trumbull No. 2009-T-0018, 2009-Ohio-6521, ¶11. The Ohio Supreme Court explained the trial court's task in ruling on a motion for JNOV, pursuant to Civ.R. 50(B), in *Posin v. A.B.C. Motor Court Hotel*, 45 Ohio St.2d 271, 275 (1976) (citation omitted):

The test to be applied by a trial court in ruling on a motion for judgment notwithstanding the verdict is the same test to be applied on a motion for a directed verdict. The evidence adduced at trial and the facts established by admissions in the pleadings and in the record must be construed most strongly in favor of the party against whom the motion is made, and, where there is substantial evidence to support his side of the case, upon which reasonable minds may reach different conclusions, the motion must be denied. Neither the weight of the evidence nor the credibility of the witnesses is for the court's determination in ruling upon either of the above motions.

{¶49} Appellants' fourth assignment of error states:

{¶50} "The trial court committed prejudicial error by overruling plaintiff-appellants' Motion for JNOV on the jury's award against the Estate of John Neff."

{¶51} Under this assignment, appellants argue the trial court should have granted JNOV in favor of the estate on GLC's conversion counterclaim because the contract was between the corporate entities, JFN and GLC, and there was no evidence presented to pierce the corporate veil and hold Mr. Neff individually liable.

{¶52} "[A] plaintiff need not pierce the corporate veil" in order to hold a corporate officer personally liable for his or her own tortious acts. *Roberts v. RMB Enters.*, 197 Ohio App.3d 435, 449 (12th Dist.2011).

> A corporate officer, however, 'may not be held liable merely by virtue of his status as a corporate officer.' [*Mohme v. Deaton*, 12th Dist. Warren No. CA2005-12-133, 2006-Ohio-7042, ¶28.] Rather, '(t)he true basis of liability is the officer's violation of some duty owed to the third person which injures such third person.' *Krieger Ford, Inc. v. Chase Motors, Inc.* (Aug. 3, 1999), Franklin App. No. 98AP-982, 1999 WL 561693, at *8. In other words, the evidence presented must indicate that the corporate officer 'specifically directed the particular act to be done, or participated, or co-operated therein.' (Emphasis omitted.) *Young v. Featherstone Motors, Inc.* (1954), 97 Ohio App. 158, 171, 124 N.E.2d 158.

*Id.*

{¶53} Furthermore, where the owner of a corporation exercises control over the corporation such that it has no separate mind, will, or existence and thereby commits

fraud, an illegal act, or similarly unlawful act, the corporation may be considered its owner's alter ego. *Dombroski v. Wellpoint, Inc.*, 119 Ohio St.3d 506, 2008-Ohio-4827, ¶29. In such cases, the corporate form may be disregarded to hold the owner personally liable to persons injured by such control and wrong. *Id.* at ¶18, 29, citing *Belvedere Condominium Unit Owners' Assn. v. R.E. Roark Cos.*, 67 Ohio St.3d 274 (1993), paragraph three of the syllabus.

{¶54} Although the contract at issue here was between GLC and JFN, GLC presented evidence that Mr. Neff, not JFN, controlled the premises. The land is owned by a trust. Mr. Neff was one of the trustees and had sole authority to rent and/or sell the premises. According to the trust agreement, Mr. Neff was compensated by the proceeds of any rental or sale. Furthermore, GLC was told it would need Mr. Neff's permission to enter the premises after the contract between JFN and GLC expired, and Mr. Neff testified in deposition that he, not JFN, refused to permit GLC to enter.

{¶55} Perhaps most significant here is that Mr. Neff, in his individual capacity, was named as a plaintiff. He was not joined as a party by GLC. The allegations throughout the complaint suggest it was Mr. Neff who was in charge, and JFN *and* Mr. Neff who sustained damage. When the record is viewed in a light most favorable to GLC, there is substantial evidence from which the jury could have concluded Mr. Neff was personally liable to GLC. The trial court did not err in overruling appellants' motion for JNOV with regard to Mr. Neff's individual liability.

{¶56} Appellants' fourth assignment of error is without merit.

{¶57} Appellants' fifth assignment of error states:

16

{¶58} "The trial court committed prejudicial error by overruling plaintiff-appellants' Motion for JNOV on the issue of Defendant's breach of the License Agreement."

{¶59} Under this assignment, appellants argue GLC breached the contract by failing to remove its materials from the premises by the end of the contract term and by failing to pay royalties due from reconciliation. Thus, appellants argue that GLC, having breached the contract itself, could not prevail on its own breach of contract counterclaim.

{¶60} Appellants presented evidence that the contract between the parties had expired and that GLC had been warned repeatedly about its duty to remove its materials by the end of the term. GLC, however, presented evidence of a course of dealings between the parties in which GLC had previously continued normal business operations after the expiration of its contract, pending renewal. The previous contract between the parties was made retroactive to cover two months during which the parties were engaged in renewal negotiations and during which normal business continued. Warning letters from JFN's counsel appear in each set of negotiations and could have been construed as a negotiating tactic rather than a serious threat. The contract called for reconciliation of royalties, but did not set a date certain by which GLC had to settle any outstanding debt. The record indicates payments were made and accepted late and that business continued normally in the interim. Furthermore, the contract provides a remedy for GLC's failure to remove its materials: a clause permitted JFN to remove GLC's materials and charge GLC the cost of removal in the event GLC failed to remove its materials.

**{¶61}** The fact that GLC may have breached the contract by failing to pay the royalties due does not defeat its counterclaim for conversion. There was evidence from which reasonable minds could conclude appellants breached the contract and converted GLC's property. As such, the trial court did not err in overruling appellants' motion for JNOV.

**{¶62}** Appellants' fifth assignment of error is without merit.

**{¶63}** We turn now to GLC's cross-appeal. GLC's first assignment of error states:

**{¶64}** "The trial court erred in failing to award prejudgment interest to Great Lakes Crushing."

**{¶65}** Under this assignment of error, GLC argues a favorable judgment in a breach of contract case entitles the prevailing party to an award of prejudgment interest under R.C. 1343.03(A). GLC further argues it was entitled to an award of prejudgment interest on both of its counterclaims—breach of contract and conversion—under R.C. 1343.03(C).

**{¶66}** In denying GLC's motion for prejudgment interest, the trial court applied R.C. 1343.03(B) and granted GLC interest from the date of judgment. The trial court indicated it had no basis to find appellants failed to exercise good faith in settlement negotiations or in litigating the case, and the contract at issue did not provide for any money to be paid to GLC.

**{¶67}** GLC first argues it is entitled to prejudgment interest on its breach of contract counterclaim, pursuant to R.C. 1343.03(A). "'R.C. 1343.03(A) automatically bestows a right to statutory interest as a matter of law on a judgment, and does not leave any discretion to the trial court to deny such interest.'" *Marion Plaza, Inc. v. 700*

18

*Block, LLC*, 7th Dist. Mahoning No. 09 MA 113, 2010-Ohio-1539, ¶13, quoting *Cafaro Northwest Partnership v. White*, 124 Ohio App.3d 605, 608 (7th Dist.1997). Thus, whether a party is entitled to an award of prejudgment interest pursuant to R.C. 1343.03(A) is a question of law subject to de novo review. *Id*.

> **{¶68}** Although the terms of R.C. 1343.03(A) clearly allow interest to run from every breach of contract judgment, prejudgment interest is not an entitlement in every breach of contract action. By the explicit terms of R.C. 1343.03(A), prejudgment interest is limited to those contracts that provide for a payment of money that the breaching party failed to pay.

*RPM, Inc. v. Oatey Co.*, 9th Dist. Medina Nos. 3282-M & 3289-M, 2005-Ohio-1280, ¶64. In this case, the contract did not call for appellants to pay GLC any money. GLC is not entitled to prejudgment interest on the basis of R.C. 1343.03(A).

**{¶69}** GLC next argues it is entitled to prejudgment interest on its conversion counterclaim, pursuant to R.C. 1343.03(C), because appellants did not make a good-faith effort to settle the case. An award of prejudgment interest pursuant to R.C. 1343.03(C) lies within the sound discretion of the trial court. *Kalain v. Smith*, 25 Ohio St.3d 157, 159 (1986). An abuse of discretion is the trial court's "failure to exercise sound, reasonable, and legal decision-making." *State v. Beechler*, 2d Dist. Clark No. 09-CA-54, 2010-Ohio-1900, ¶62, quoting *Black's Law Dictionary*, 11 (8th Ed.2004). In *Kalain*, at 159, the Ohio Supreme Court addressed the issue of what constitutes failure to make a good faith effort to settle the case:

> A party has not 'failed to make a good faith effort to settle' under R.C. 1343.03(C) if he has (1) fully cooperated in discovery proceedings, (2) rationally evaluated his risks and potential liability, (3) not attempted to unnecessarily delay any of the proceedings, and (4) made a good faith monetary settlement offer or responded in good faith to an offer from the other party. If a party has a good faith, objectively reasonable belief that he has no liability, he need not make a monetary settlement offer.

19

{¶70} In this case, the trial court found no evidence that appellants failed to act in good faith and specifically found that appellants had an objectively reasonable belief they were without liability. Nothing in the record suggests appellants were uncooperative in discovery or intentionally delayed the proceedings. As the trial court noted, the issues were "hotly disputed." GLC does not direct us to anything in the record that causes us to second guess the trial court's finding that appellants had an objectively reasonable belief in the merits of their case. The trial court did not abuse its discretion in refusing to award prejudgment interest to GLC on its conversion counterclaim.

{¶71} GLC's first assignment of error is without merit.

{¶72} GLC's second assignment of error states:

{¶73} "The trial court erred in instructing [the] jury on punitive damages on GLC's conversion claim."

{¶74} Under this assignment, GLC argues it was entitled to a punitive damages instruction with regard to its conversion counterclaim because JFN and Mr. Neff acted with malicious disregard for GLC's legal rights.

{¶75} Appellants argue this issue was not preserved for our review, as GLC did not object to the jury instruction at trial. However, the record reflects GLC did object, stating: "[t]he only objection we have to the jury instructions is the failure to include a punitive damages instruction. We believe, under the second definition of malice, conscious disregard for the rights of others, it has the substantial likelihood of causing harm." The trial court overruled that objection. The issue is, therefore, properly preserved for our review.

20

{¶76} Trial courts enjoy broad discretion in fashioning jury instructions. *Smith v. Redecker*, 4th Dist. Athens No. 08CA33, 2010-Ohio-505, ¶51. However, a trial court may not refuse to issue a requested instruction if it is a correct statement of law appropriate and pertinent to the facts. *Id.* With regard to the facts, the trial court has discretion to determine whether sufficient evidence was presented at trial to warrant giving the requested instruction. *Id.* at ¶52. "Thus, in our review we must determine whether the trial court abused its discretion by finding that the evidence was insufficient to support the requested charge." *Id.*

{¶77} In *Preston v. Murty*, 32 Ohio St.3d 334, 336 (1987), the Ohio Supreme Court discussed the circumstances that warrant a punitive damages instruction on the basis of malice:

> We therefore hold that actual malice, necessary for an award of punitive damages, is (1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm. In the latter case, before submitting the issue of punitive damages to the jury, a trial court must review the evidence to determine if reasonable minds can differ as to whether the party was aware his or her act had a great probability of causing substantial harm. Furthermore, the court must determine that sufficient evidence is presented revealing that the party consciously disregarded the injured party's rights or safety.

{¶78} Here, the trial court did not abuse its discretion in finding that the evidence was insufficient to warrant an instruction on punitive damages. Nothing in the record suggests appellants' actions were motivated by "hatred, ill will or a spirit of revenge." *Id.* Appellants also cannot be said to have consciously disregarded GLC's legal rights. The fact that the parties apparently engaged in heated negotiations and debates regarding their respective rights under the contract does not equate to bad faith or malice.

21

{¶79} GLC's second assignment of error is without merit.

{¶80} For the foregoing reasons, the judgment of the Lake County Court of Common Pleas is affirmed.


DIANE V. GRENDELL, J.,

CYNTHIA WESTCOTT RICE, J.,

concur.