[Cite as *State v. Jackson*, 2022-Ohio-3483.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## LAKE COUNTY

| | |
|---|---|
| STATE OF OHIO, | **CASE NO. 2021-L-018** |
| Plaintiff-Appellee, | |
| - v - | Criminal Appeal from the<br>Court of Common Pleas |
| WILLIAM J. JACKSON, | |
| Defendant-Appellant. | Trial Court No. 2020 CR 000558 |

**O P I N I O N**

Decided: September 30, 2022
Judgment: Reversed and remanded

*Charles E. Coulson,* Lake County Prosecutor, and *Jennifer A. McGee,* Assistant Prosecutor, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*Edward M. Heindel,* 2200 Terminal Tower, 50 Public Square, Cleveland, OH 44113 (For Defendant-Appellant).

CYNTHIA WESTCOTT RICE, J.

{¶1} Appellant, William J. Jackson, appeals the January 26, 2021 judgment of the Lake County Court of Common Pleas sentencing him to an indefinite prison term. Appellee, the State of Ohio, has also filed an appeal, currently pending before this court: Case No. 2021-L-016. For the reasons discussed herein, the judgment is reversed and remanded.

{¶2} This case stems from a shooting that occurred in the parking lot of Eastview Meadows Apartments on the morning of April 26, 2020, over a drug-deal dispute.

Purportedly, Mr. Jackson had paid $2,000 to Vincent Anderson (A.K.A. "Ace") for some Percocet pills, which were never delivered, and the two exchanged threats over social media. Mr. Anderson, who lived in Detroit, Michigan, asked his friend, Phillip Herbruck, to drive him to Lake County the night before the shooting. The following morning, Mr. Herbruck drove Mr. Anderson to the Eastview Meadows Apartments, where Mr. Jackson's daughter and her mother, Trina Jenkins, lived.

{¶3} On the same morning, Mr. Jackson asked his cousin, Kraig Davis, to give him a ride to the Eastview Meadows Apartments. When Mr. Jackson spotted Mr. Anderson in the parking lot of the Eastview Meadows Apartments, he pulled out a gun and began shooting in the direction of Mr. Anderson from the vehicle. Mr. Anderson fled the parking lot in the rental car driven by Mr. Herbruck, which was later recovered on the side of the road with Mr. Herbruck; Mr. Anderson had left the area and was not seen again. Mr. Jackson left in a vehicle driven by Mr. Davis.

{¶4} Police later recovered nine shell casings. Several bullet holes were found in Mr. Herbruck's rental vehicle, the left rear tire was flat, and two spent bullets were recovered from the trunk. Two additional bullets struck an apartment building, damaging the window of another resident. Mr. Jackson admits to the shooting but maintains that it was done in self-defense, as he believed Mr. Anderson was a threat to him and his family. Fortunately, no one was injured or killed during the shooting.

{¶5} Mr. Jackson was indicted on seven counts: Counts 1 and 2, Attempted Murder, felonies of the first degree, in violation of R.C. 2923.02; Counts 3 and 4, Felonious Assault, felonies of the second degree, in violation of R.C. 2903.11(A)(2); Counts 5 and 6, Improperly Discharging a Firearm at or Into a Habitation or School Safety Zone, felonies

2

of the second degree, in violation of R.C. 2923.161(A)(1); and Count 7, Improperly Handling Firearms in a Motor Vehicle, a felony of the fourth degree, in violation of R.C. 2923.16(A). Counts 1 through 6 included firearm specifications pursuant to R.C. 2941.145 and discharge specifications pursuant to R.C. 2941.146.

{¶6} The case proceeded to trial; ultimately, the jury acquitted Mr. Jackson of Counts 2 and 3, the attempted murder and felonious assault of Mr. Herbruck, but found him guilty on the remaining five counts and the corresponding specifications. At the subsequent sentencing hearing, the court found that the felonious assault charge in Count 4 merged with the attempted murder charge in Count 1, and the state elected to proceed with sentencing on Count 1.

{¶7} The court sentenced Mr. Jackson to an indefinite prison term with a minimum term of three years and a maximum term of four and one-half years on Count 1; three years on each of Counts 5 and 6; and 18 months on Count 7, all to be served concurrently. Mr. Jackson was also sentenced to an additional term of three years and five years as mandatory prison terms for the specifications in Count 1, to be served consecutively to each other, for a total of eight years in prison, and to be served prior and consecutive to the underlying offenses. In all, Mr. Jackson faced a minimum of 11 years and a maximum of 12.5 years in prison.

{¶8} Mr. Jackson now appeals, assigning four errors for our review. The first states:

{¶9} The trial court erred when it did not allow Jackson to introduce statements that Anderson threatened to kill him.

3

Case No. 2021-L-018

{¶10} Under this assignment of error, Mr. Jackson argues that the trial court erred by preventing him from testifying directly as to the threats Mr. Anderson made about and to him. Specifically, Mr. Jackson challenges two statements: first, a text message from Mr. Anderson to Mr. Herbruck that he needed to go "whack a n * * *." Mr. Jackson also sought to testify as to the specific statements Mr. Anderson made on live social media streams to Mr. Jackson on the morning of the shooting. The trial court found all these statements to be inadmissible hearsay.

{¶11} An appellate court reviews a trial court's hearsay rulings de novo when the question is purely legal, such as whether testimony constitutes inadmissible hearsay. *State v. Kratochvill*, 11th Dist. Lake No. 2019-L-088, 2020-Ohio-7000, ¶27. "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). Hearsay is generally inadmissible. Evid.R. 802. However, there are various exceptions allowing its admittance enumerated in Evid.R. 803 and 804.

{¶12} Mr. Jackson argues these statements were submitted to prove his mindset the morning of the shooting, while the state argues Mr. Jackson attempted to enter those statements into evidence to prove "the truth of the matter asserted," (i.e., that Mr. Anderson intended to kill him), and were therefore inadmissible evidence.

{¶13} It is undisputed that the statements Mr. Jackson attempted to enter into evidence were relevant to Mr. Jackson's claim of self-defense. "The elements of a valid claim of self-defense are as follows: (1) the defendant was not at fault in creating the situation giving rise to the affray; (2) the defendant had a bona fide belief that he or she was in imminent danger of death or great bodily harm and that his or her only means of

4

escape from such danger was in the use of such force; and (3) the defendant did not violate any duty to retreat or avoid the danger." *State v. Petway*, 11th Dist. Lake No. 2019-L-124, 2020-Ohio-3848, ¶41 citing *State v. Barnes*, 94 Ohio St.3d 21, 24 (2002).

{¶14} We first address the court's exclusion of the text message. While we agree the text message was hearsay, we find it was improperly excluded as it falls under the exception listed in Evid.R. 803(3), which permits statements of the declarant's then-existing state of mind. Moreover, though Mr. Jackson had no personal knowledge of the text message at the time of the shooting, it did corroborate Mr. Jackson's testimony regarding Mr. Anderson's threats to his life. His lack of knowledge of the text at the time does not render the evidence irrelevant because it goes to an interpretation of the victim's prior threat and is germane in that it serves to confirm the magnitude and sincerity of the threat. This is particularly helpful to the jury as the threats the two exchanged that morning were done over a social media live stream in real time, a medium that involves a contemporaneous, unrecorded communication between the parties which would likely be irretrievable and thus incapable of admission for the jury to directly review. The admission of the text message would have assisted the jury in understanding what was actually occurring in Mr. Anderson's mind and underscored the gravity of Mr. Jackson's beliefs. Further, its admission would confirm and lend credibility to Mr. Jackson's subjective belief. It is, therefore, directly relevant to his claim of self-defense and admissible; the trial court erred in excluding the text message.

{¶15} Mr. Jackson also sought to testify as to what Mr. Anderson told him over social media that morning. As one of the elements of self-defense requires a showing of the defendant's subjective belief, not the victim's true intentions, we agree with Mr.

5

Jackson that the statements regarding the conversation with Mr. Anderson via social media that morning were not offered to prove the truth of the matter asserted, but his mindset the morning of the shooting. Therefore, the testimony was not hearsay and the trial court improperly excluded Mr. Jackson's testimony regarding his social media conversation with Mr. Anderson that morning.

{¶16} These errors drastically hindered Mr. Jackson's self-defense argument and merit reversal. Accordingly, Mr. Jackson's first assignment of error has merit.

{¶17} His second assignment of error states:

{¶18} "Jackson was denied his right to the effective assistance of counsel because counsel failed to request an instruction on the castle doctrine."

{¶19} In order to show ineffective assistance of counsel, the defendant must show that counsel's performance fell below an objective standard of reasonable representation and that the defendant was prejudiced by counsel's performance. *State v. Bradley,* 42 Ohio St.3d 136 (1984), paragraph two of the syllabus. "'[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.'" *Id.* at 143 quoting *Strickland v. Washington*, 466 U.S. 668, 697 (1984). "'If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, * * * that course should be followed.'" *Bradley, supra,* quoting *Strickland, supra.* In order to succeed on such a claim, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Id.* at 694. Critically, Mr. Jackson was not entitled to a jury instruction on the castle doctrine and thus, he cannot prove prejudice.

6

Case No. 2021-L-018

{¶20} The castle doctrine, as in effect at the time of the shooting, states that "a person who lawfully is in that person's residence has no duty to retreat before using force in self-defense, defense of another, or defense of that person's residence * * *." Former R.C. 2901.09(B). "[A] person who, through no fault of her own, is assaulted in her home may stand her ground, meet force with force, and if necessary, kill her assailant, without any duty to retreat." *State v. Thomas*, 77 Ohio St.3d 323, 327 (1997). "Residence", as used in this section, "means a dwelling in which a person resides either temporarily or permanently or is visiting as a guest." R.C. 2901.05(D)(3). Further, "'[d]welling' means a building or conveyance of any kind that has a roof over it and that is designed to be occupied by people lodging in the building or conveyance at night, regardless of whether the building or conveyance is temporary or permanent or is mobile or immobile. As used in this division, a building or conveyance includes, but is not limited to, an attached porch, and a building or conveyance with a roof over it includes, but is not limited to, a tent." R.C. 2901.05(D)(2).

{¶21} The cases Mr. Jackson cites in support of his argument are clearly and fatally distinguishable as the facts of those cases did not involve a shooting in a parking lot, but took place in dwellings, as defined by statute. The parking lot of an apartment complex is not a "dwelling" for purposes of R.C. 2901.09; it is neither building nor conveyance, it has no roof, and it is not intended to be occupied overnight. A parking lot is more akin to a driveway, to which Ohio courts have declined to extend castle doctrine protections. *See State v. Moore*, 4th Dist. Lawrence No. 19CA13, 2020-Ohio-4321, ¶21. *See also State v. Estelle*, 3rd Dist. Allen No. 1-20-50, 2021-Ohio-2636, ¶16.

7

Case No. 2021-L-018

{¶22} In light of the foregoing, we find Mr. Jackson cannot show he was prejudiced by the exclusion of a castle doctrine jury instruction, and thus counsel was not ineffective for failing to request such an instruction.

{¶23} Mr. Jackson's second assignment of error is without merit.

{¶24} His third states:

{¶25} The convictions were not supported by sufficient evidence.

{¶26} In determining whether there is sufficient evidence presented to sustain a conviction, a reviewing court "is to examine the evidence admitted at trial to determine whether such evidence, if believe, would convince the average mind of the defendant's guilty beyond a reasonable doubt." *State v. Jenks,* 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. "[a] reviewing court must look to the evidence presented * * * to assess whether the state offered evidence on each statutory element of the offense, so that a rational trier of fact may infer that the offense was committed beyond a reasonable doubt." *State v. March,* 11th Dist. Lake No. 98-L-065, 1999 WL 535675, *3 (July 16, 1999).

{¶27} Notwithstanding our discussion under Mr. Jackson's first assigned error, we will also consider his challenges regarding the sufficiency of the evidence that the state presented. Specifically, Mr. Jackson challenges his conviction for the attempted murder of Mr. Anderson on the grounds that the state did not present the testimony of the victim, Mr. Anderson.[1]

---

1. Because the felonious assault and attempted murder counts merged for purposes of sentencing, we only address his conviction of attempted murder.

Case No. 2021-L-018

{¶28} Attempted murder requires a showing that a defendant purposely or knowingly engaged in conduct which, if successful, would result in the death of another. R.C. 2923.02(A) and R.C. 2903.02. However, the testimony of the victim is not required to prove intent to kill or cause physical harm. "Intent does not need to be proven by direct testimony." *In re A.J.S.,* 173 Ohio App.3d 171, 2007-Ohio-3216, ¶43 (10th Dist.), citing *State v. Burke,* 73 Ohio St.3d 399 (1995). "An intent to kill may be inferred 'where the natural and probable consequence of a wrongful act is to produce death.'" *A.J.S., supra,* at ¶42, quoting *State v. Robinson*, 161 Ohio St. 213 (1954), paragraph five of the syllabus. "'It is a fundamental principle that a person is presumed to intend the natural, reasonable and probable consequences of his voluntary acts.'" *A.J.S., supra,* quoting *State v. Johnson*, 56 Ohio St.2d 35, 39 (1978). Moreover, "'a firearm is an inherently dangerous instrumentality, the use of which is reasonably likely to produce death.'" *A.J.S., supra,* quoting *State v. Widner*, 69 Ohio St.2d 267, 270 (1982).

{¶29} Here, intent may be reasonably inferred from the fact that Mr. Jackson fired, by his own testimony, ten shots "rapid fire" at Mr. Anderson from a firearm. Furthermore, Mr. Davis affirmed that once Mr. Jackson recognized Mr. Anderson was in the parking lot, he produced the firearm and fired several shots out the window. Even if Mr. Jackson wasn't aiming for Mr. Anderson's head, as he testified, he still admits he was aiming and firing at Mr. Anderson. Thus, the jury could reasonably find that Mr. Jackson intended to kill Mr. Anderson without the testimony of Mr. Anderson.

{¶30} In light of the foregoing, we find the state presented sufficient evidence of each element of attempted murder.

{¶31} Mr. Jackson's third assignment of error is without merit.

9

{¶32} His fourth states:

{¶33} The convictions for felonious assault and attempted murder were against the manifest weight of the evidence.

{¶34} Unlike a sufficiency argument, manifest weight requires the appellate court to conduct an analysis of the weight of the evidence presented, putting the appellate court in the role of the "thirteenth juror." *State v. Thompkins,* 78 Ohio St.3d 380, 387 (1997). The appellate court must give deference to the factual findings of the jury regarding evidence presented and the credibility of the witnesses. *State v. DeHass,* 10 Ohio St.2d 230 (1967), paragraph two of the syllabus. When applying the manifest-weight standard of review, the reviewing court reviews the entire record, """weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.""" *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶20, quoting *Tewarson v. Simon*, 141 Ohio App.3d 103, 115 (9th Dist.2001), quoting *Thompkins, supra.*

{¶35} However, given our disposition of the case under Mr. Jackson's first assigned error, we need not address his manifest-weight argument. Evidence of his self-defense claim, which would have gone to the weight of the evidence, was improperly excluded, and necessitates reversal.

10

Case No. 2021-L-018

{¶36} In light of the foregoing, the judgment of the Lake County Court of Common Pleas is reversed and remanded for a new trial.

THOMAS R. WRIGHT, P.J., concurs with a Concurring Opinion,

JOHN J. EKLUND, J., dissents with a Dissenting Opinion.

_____

THOMAS R. WRIGHT, P.J., concurring.

{¶37} I concur with the lead opinion. However, I write separately to expand on why the statements at issue were not properly excluded as hearsay and why their exclusion did not amount to harmless error.

{¶38} The two sets of statements were purportedly made by Anderson to Herbruck and to Jackson. In the statement to Herbruck, Anderson allegedly stated via text, "got to whack a n* * *, bro," prior to Herbruck driving Anderson from Detroit to Ohio and eventually to Jackson's apartment building. Defense counsel sought to elicit testimony from Herbruck as to this statement and argued, in part, that it was admissible as demonstrating Anderson's intent pursuant to Evid.R. 803(3). In the statements to Jackson, Anderson purportedly stated over social media prior to the shooting that he was going to kill Jackson and his girlfriend. Defense counsel indicated that he was not offering the statements made to Jackson for the truth of the matter asserted but, instead, for the effect of the statements on Jackson. The trial court excluded testimony as to the statements as hearsay.

11

Case No. 2021-L-018

**{¶39}** Subject to specific exclusions, hearsay "is a statement, other than one made by the declarant while testifying at the trial or hearing, *offered in evidence to prove the truth of the matter asserted* in the statement." (Emphasis added.) Evid.R. 801(C). Thus, not all extrajudicial utterances constitute hearsay. "'Statements offered as evidence of commands or threats or rules directed to the witness, rather than for the truth of the matter asserted therein, are not hearsay.'" *State v. Skatzes*, 104 Ohio St.3d 195, 2004-Ohio-6391, 819 N.E.2d 215, ¶ 132, quoting *United States v. Bellomo*, 176 F.3d 580, 586 (2d Cir.1999), citing *United States v. Stratton*, 779 F.2d 820, 830 (2d Circ.1985).

> **{¶40}** "If a statement is not offered to prove its truth but is offered for some other reason such as simply to prove the statement was made, if such fact is relevant, it is not hearsay." 1980 Staff Note, Evid.R. 801(C). Additionally, "[w]ords constituting conduct are not hearsay, e.g., words of a contract, libel, slander, threats and the like." *Id.*

*State v. Fambro*, 11th Dist. Trumbull No. 2016-T-0063, 2017-Ohio-5646, ¶ 45. *See also State v. Jalowiec*, 91 Ohio St.3d 220, 227, 744 N.E.2d 163 (2001), citing Evid.R. 801(C) and Comment ("Testimony about threats is not hearsay."). Therefore, when evidence of a threat is offered for purposes independent of the truthfulness of the speaker's intention to act in the manner described, the threat does not constitute hearsay by definition. *Fambro* at ¶ 47, quoting *State v. Skipper*, 2d Dist. Montgomery No. 25404, 2013-Ohio-4508, ¶ 14 ("'The very act of uttering the words constitutes the threat whether or not the declarant actually intended to act in the manner described in the threat.'"), and citing *State v. Williams*, 38 Ohio St.3d 346, 348, 528 N.E.2d 910 (1988) ("[a] statement is not hearsay if it is admitted to prove that the declarant made it, rather than to prove the truth of its contents"), *State v. Taylor*, 8th Dist. Cuyahoga No. 45374, 1983 WL 5896, *3 (Mar. 31, 1983) ("[e]vidence of a threat is commonly offered to show the threat was made, rather

12

than to prove the truth of any fact existing at or before it was made"), and *State v. Beckwith*, 8th Dist. Cuyahoga No. 102544, 2016-Ohio-3267, ¶ 23 (cases cited). *See also Williams* at 348, fn. 4, citing Giannelli, *Ohio Evidence Manual*, Section 801.06, at 7-8 (1982) ("an out-of-court statement which would otherwise be considered hearsay may be admitted to show the existence of a verbal act (such as the acceptance of an offer) to give meaning to otherwise ambiguous conduct, to show the effect on the hearer, and to show the mental state of the declarant"), *Bryant v. Spear-Hardy*, 2d Dist. Montgomery No. 23449, 2010-Ohio-1903, ¶ 37 (characterizing threats as "verbal acts" offered to show that the words were spoken, and not for their truth), and  2 McCormick, *Evidence*, Section 249 (8th Ed.) ("Utterances and writings offered to show effect on hearer or reader," such as in self-defense cases where a threat is "offered to show the defendant's reasonable apprehension of danger, the statement is not offered for a hearsay purpose because its value does not depend on its truth.").

{¶41}   However, if a threat is offered into evidence to prove the truthfulness of the expressed intention of the speaker, it constitutes hearsay but is not barred by the rule against hearsay due to an exception contained in Evid.R. 803(3).  Evid.R. 803(3) provides:

{¶42}   The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

{¶43}   * * *

{¶44}   **(3) Then Existing, Mental, Emotional, or Physical Condition.** A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the

13

execution, revocation, identification, or terms of declarant's will.

See State v. Allen, 9th Dist. Medina No. 1814, 1990 WL 40197, *4 (Apr. 4, 1990) ("The seminal case on the state of mind exception is Mutual Life Ins. Co. v. Hillmon (1892) 145 U.S. 285, which stands for the proposition that hearsay statements reflecting a declarant's intentions or future plans are admissible to prove subsequent conduct."). See also State v. Yarbrough, 95 Ohio St.3d 227, 2002-Ohio-2126, 767 N.E.2d 216, ¶ 33.

{¶45} Accordingly, determination of whether a threat constitutes hearsay depends on the purpose for which it was offered. Thus, for example, if the threat is offered solely to prove its effect on the listener, and the truthfulness of the expressed intention is immaterial, the threat does not constitute hearsay. See Evid.R. 801(C). However, if the threat is offered to demonstrate the truthfulness of the speaker's forward-looking intention, it is hearsay, but it is excepted from the rule against admission of hearsay pursuant to Evid.R. 803(3). Yarbrough at ¶ 33.

{¶46} Here, with respect to the statement made by Anderson to Herbruck, on cross-examination of Herbruck, defense counsel asked him: "The morning of April 26th [Anderson] texted you that he's got to go whack a n* * *r." The court sustained the state's objection to this question without specification of the basis of the objection or the ruling. After the court sent the jury to begin deliberations, the following exchange occurred between the court and counsel:

{¶47} THE COURT: Anything else for the record?

{¶48} [DEFENSE COUNSEL]: Judge, may I do an offer of proof for the record?

{¶49} THE COURT: All right. You'll have to be quick.

14

**{¶50}** [DEFENSE COUNSEL]: I will. Thank you. I'm just submitting for the purposes of the record Defendant's Exhibit E, I've marked it as such. This is the text message from [Anderson] to * * * Herbruck in which it's been referenced at trial but it says got to whack a n* * *, bro and [Herbruck]'s response coming RN which in text message language means right now. I believe this was admissible under a hearsay exception 803.3 to show * * * Anderson['s] * * * intent or plan to kill * * *Jackson on the day of April 26th. I also believe it was admissible as impeachment purposes against * * * Herbruck because he denied knowing or being aware that [Anderson's] intent was to kill * * * Jackson and that this message clearly responds affirmatively to this objective by [Anderson]. Thank you.

**{¶51}** Because the statement by Anderson demonstrated Anderson's intent/plan, it is excepted from the rule against hearsay through Evid.R. 803(3). Accordingly, the statement should not have been excluded on the basis of hearsay.[2]

**{¶52}** With respect to the statements made by Anderson to Jackson, during direct examination of Jackson, Jackson explained that about one month prior to the shooting, he had tried to purchase Percocet from Anderson, but Anderson took Jackson's money without delivering the pills. Thereafter, Jackson advised others in the Lake County area not to purchase drugs from Anderson. Jackson then testified as follows:

**{¶53}** Q. Okay. What dispute were we talking about earlier then?

**{¶54}** A. The dispute that we were talking about earlier was when [Anderson] said, so after [Anderson] robbed me and I told everybody that he robbed me [Anderson] got p*ssed off that I told everybody because he was coming to Ohio for no reason and he couldn't get his drugs off any more, at least the people

---

2. It is not clear from the transcript whether the trial court excluded Herbruck's testimony regarding the text on the basis of hearsay. However, as defense counsel assumed as much when making the proffer, and the trial court did not correct defense counsel's presumption, I likewise presume that hearsay was the basis of the objection and ruling. Further, I concur in the lead opinion's determination that Anderson's intent was relevant, and therefore, exclusion of the statement on the basis of irrelevance would likewise have been in error.

15

Case No. 2021-L-018

that I know and he knew so since he was mad about that he told me, he's like –

{¶55} [THE STATE]: Objection.

{¶56} THE COURT: Sustained.

{¶57} Q. You can't say what [Anderson] said.

{¶58} A. Okay.

{¶59} [DEFENSE COUNSEL]: I apologize, Your Honor, can we have a quick conference at the bench?

{¶60} - - - -

{¶61} Thereupon, the following occurred at a sidebar at the bench between counsel and the Court, outside of the presence and the hearing of the jury:

{¶62} [DEFENSE COUNSEL]: I apologize.  What I'm asking * * * Jackson is only for a specific threat that [Anderson] made to him about [Anderson] saying he was going to kill [Jackson].[3] That's relevant to our self-defense arguments because it gives [Jackson] knowledge of [Anderson]'s intent to him before that date April 26th.

{¶63} THE COURT: I'm not following you.

{¶64} [DEFENSE COUNSEL]: If * * * Jackson were to answer that question what [Anderson] told him was I'm going to kill you, I'm going to kill [your girlfriend], that's all I want to elicit because that's information that it's relevant to our self-defense arguments.  It's information not because it's subsequently true but because it goes to * * * Jackson's belief about [Anderson's] intent when he showed up that day at the house.

{¶65} [THE STATE]: Your Honor, Your Honor, it's still an out of court statement and defense could have subpoenaed [Anderson] and brought, brought him into Court today.  The statement

---

3. Defense counsel indicated that a threat was made that Anderson was going to kill "Ace," which is Anderson's nickname.  The context of the remaining portion of defense counsel's remarks demonstrate that counsel misspoke, and it was well understood that Anderson's purported statements consisted of threats to kill Jackson and Jackson's girlfriend.

16

should not come in through the defendant because it's still an out of court statement by somebody, it's hearsay.

{¶66} THE COURT: I'm going to sustained (sic.) the objection.

After the defense rested, defense counsel asserted:

{¶67} Okay.  For the record, during the direct examination of * * * Jackson I attempted to ask him about the threat that * * * Anderson had made toward[] him in the early morning hours of April 26th.  I believe that was admissible because it was not admitted for or it was not sought to be admitted for the truth of the matter asserted instead it was a verbal act in the sense that it was a threat that was being induced (sic.) to show the state of mind of * * * Jackson at the time he saw [Anderson] later that same morning.  That's it.  Thank you.

{¶68} Accordingly, defense counsel sought to elicit from Jackson threats made to him by Anderson that Anderson was going to kill Jackson and his girlfriend.  The stated purpose of offering these statements was to establish the effect of the statements on the listener.  Therefore, as the statements were not offered to prove the truth of the matter asserted, the court erred in sustaining the hearsay objection.

{¶69} Moreover, although the statements made by Anderson to Jackson were not offered for the truth of the matter asserted, the content of the statements to Jackson demonstrate intent in substantially the same manner as the statement to Herbruck.  Therefore, although Jackson did not specifically argue that the statements to him were excepted from the rule against hearsay by Evid.R. 803(3), this court would be remiss if we failed to acknowledge that the threats made directly to Jackson were also admissible for the truth of Anderson's intent.

{¶70} Further, I agree with the lead opinion that exclusion of the statements significantly hindered Jackson's self-defense argument.  First, with respect to the text message expressing an intent to kill, as noted by the lead author, although Jackson had

17

no personal knowledge of the text, the substance of the text corroborated Jackson's version of events and lent credibility to Jackson's subjective fear for his life. I acknowledge, as recognized by the dissent, that a detective investigating the case confirmed the substance of the text message in his testimony. However, the trial court sustained an objection to a question regarding the text during Herbruck's testimony. Further, although the defense relied on the content of Anderson's text to Herbruck during closing argument, in the state's rebuttal argument, it countered:

> **{¶71}** To respond briefly again to some of the arguments defense made about this text message between [Anderson] and [Herbruck]. We're not denying that [Anderson] is not an upstanding citizen but how does that text message which we didn't, there was no clarification as to if it was in fact from [Anderson] or who [Anderson] was talking about but for argument purpose let's assume he was talking about [Jackson]. How does that text message show [Jackson]'s state of mind when he went to [Jackson's apartment building] that day, he had no idea about that text message.

Thus, the state invited the jury to believe the statement to Herbruck did not involve Jackson; however, as the defense was not permitted to question Herbruck about the statement, it did not have the opportunity to further elicit testimony that potentially could have clarified the subject of the text.

{¶72} Moreover, although the state argued that the statement to Herbruck, of which Jackson was unaware, could not have impacted Jackson's state of mind, the statements made directly to Jackson are undoubtedly material to this issue. The dissent maintains that the error in excluding these statements was mitigated by other evidence of the threats, including Jackson's general testimony that Anderson threatened him and his girlfriend, that Anderson knew where Jackson lived, and that he was fearful of Anderson after a conversation with him and obtained a gun based on that conversation.

18

The dissent further indicates that Jackson's self-defense claim was undermined by evidence in the record through which the jury could conclude that Jackson was at fault in creating the situation that gave rise to the affray.

{¶73} I agree that there existed some evidence supporting Jackson's state of mind, and some evidence from which it could be inferred that Jackson was at fault. However, the trial court's erroneous hearsay ruling regarding Anderson's threats to kill Jackson precluded Jackson from fully testifying on a central issue to self-defense and providing the basis for his "bona fide belief that he * * * was in imminent danger of death or great bodily harm and that his * * * only means of escape from such danger was in the use of such force." *See State v. Petway*, 2020-Ohio-3848, 156 N.E.3d 467, ¶ 41 (11th Dist.), citing *State v. Barnes*, 94 Ohio St.3d.21, 24, 759 N.E.2d 1240.

{¶74} Further, the court's erroneous ruling hampered the remainder of Jackson's testimony. After the trial court ruled that Anderson's threats to kill constituted hearsay, defense counsel questioned Jackson about conversations he had with Anderson over social media:

{¶75} Q. Okay. What was your feeling after having that conversation with [Anderson]?

{¶76} A. I was in fear cause [Anderson] knows where I live, he's been to my house before. So I don't know where [Anderson] lives at. When I went to Detroit he had me go to some apartment building that wasn't his apartment building so I don't know where [Anderson] lives but [Anderson] knows where I live. And I can't say what he said but [Anderson] threatened me, told me that he was going to kill me and my family.

{¶77} [THE STATE]: Objection.

Case No. 2021-L-018

{¶78} THE COURT: Sustained. The jury is instructed to disregard that answer.

{¶79} * * *

{¶80} Q. Now let me skip back to the first conversation with [] Anderson. After you had that conversation you felt it was necessary to get a gun; is that correct?

{¶81} A. What is the first conversation?

{¶82} Q. Was the one a week before April 26th.

{¶83} A. Yes, when he told me he was going to kill my family.

{¶84} [THE STATE]: Objection.

{¶85} Q. Don't –

{¶86} [THE COURT:] The objection is sustained and the jury is instructed to disregard that statement.

{¶87} You're instructed not to state what other people told you so you're to follow that instruction.

{¶88} The record indicates that the court's admonition impacted Jackson's further testimony. When defense counsel inquired as to why Jackson obtained a firearm when he knew that he was prohibited from possessing a firearm due to a previous felony conviction, the following exchange occurred:

{¶89} A. I can't answer that question because I'm instructed not to say what was said.

{¶90} Q. Oh no, no, without saying what [Anderson] said why did you choose to go out and get a firearm regardless of what happened to [Anderson]?

{¶91} A. Cause I didn't want anything to happen to me or my family.

20

{¶92} Subsequently, as Jackson was testifying regarding seeing Anderson at his apartment building, he maintained that he went "into shock because [he and Anderson] just was on the phone six hours ago, [and Anderson] was just flashing guns in his FaceTime/Instagram live video and [Jackson] pulled up and [Anderson's] at [Jackson's] door." While explaining what happened thereafter, Jackson maintained that Anderson did not notice Jackson pulling into the parking lot, and Jackson's friend, who was driving, pulled up closer to Anderson, at which point Anderson noticed him. Jackson testified:

{¶93} A.  * * * As soon as I say something, at this time I still have long hair and my dreads were blond[e] so I said, I says you got balls coming to my house, [Anderson]. He said what? He said I'll blow you right now.

{¶94} [THE STATE]: Objection.

{¶95} A.  I'm sorry.

{¶96} [THE COURT]: Sustained. The jury's instructed again to disregard that statement.

{¶97} Then, while testifying as to Anderson's actions immediately prior to the shooting, Jackson maintained:

{¶98} A.  As [Anderson] is walking through that parking spot he steps into his conversation which would be back and forth with me and he, he says what he says and when he says what he says I question him, I say what and he pulled, he reached. As soon as he reached I put one in the head when I said put one in the head I load it. My gun wasn't loaded but when he reached I put one in the head. When I see his gun I fire two shots pow pow. I fired my two shots, he let off the shot, [Jackson's friend who was driving him] had already hit the gas so now he moving, we're moving, [Anderson] is –

Jackson then proceeded to describe his actions during and after the shooting.

{¶99} Therefore, due to the trial court's erroneous ruling, the jury was specifically instructed to disregard Jackson's testimony of Anderson's threats to Jackson, and

21

defense counsel and Jackson were required to structure their questions and answers in a way as to prevent further testimony as to Anderson's statements.

{¶100} However, the nature of the threat, i.e. to kill, and Jackson's perspective of the threat to his life were essential to his self-defense argument—that *Jackson* held a bona fide belief that he was in imminent *danger of death or great bodily harm*. Accordingly, Jackson's generalized testimony about "threats" and the testimony of other individuals regarding the threats do not render the errors harmless. Although Jackson's excluded testimony that Anderson directly threatened *to kill him* was essential to his self-defense argument, the court repeatedly instructed the jury to disregard Jackson's testimony of the specific threat. Based upon the gravity and import of the excluded statements and the circumstances of this case, I cannot say that the court's errors in excluding the statements that were offered to establish a core element of self-defense were harmless. Accordingly, I concur with the lead opinion.

_____

JOHN J. EKLUND, J., dissents with a Dissenting Opinion.

{¶101} I would affirm the judgment of the Lake County Court of Common Pleas. I respectfully dissent from the majority's conclusions as to the first assignment of error and would also conclude, as to the fourth assignment of error, that the appellant's conviction was supported by the manifest weight of the evidence. I concur with the majority's opinion as to the second and third assignments of error.

{¶102} To begin, when analyzing with "a pure legal question such as whether testimony constitutes inadmissible hearsay, we apply a de novo standard of review."

22

Case No. 2021-L-018

*State v. Kratochvill*, 11th Dist. Lake No. 2019-L-088, 2020-Ohio-7000, 166 N.E.3d 43, ¶ 27*, appeal not allowed*, 163 Ohio St.3d 1419, 2021-Ohio-1606, 167 N.E.3d 974, *reconsideration denied*, 163 Ohio St.3d 1497, 2021-Ohio-2270, 169 N.E.3d 1286, citing *Jack F. Neff Sand & Gravel, Inc. v. Great Lakes Crushing, Ltd.,* 11th Dist. Lake No. 2012-L-145, 2014-Ohio-2875, ¶ 23.

{¶103} Evid. R. 801(C) provides that "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." The staff note acknowledges the "relative nature" of the hearsay definition. For example, "[w]ords constituting conduct are not hearsay, e.g., words of a contract, libel, slander, threats and the like." 1980 Staff Note, Evid.R. 801(C).

{¶104} Threats are often, but not consistently, treated as verbal acts which are non-hearsay statements. *See State v. Skatzes*, 104 Ohio St.3d 195, 2004-Ohio-6391, 819 N.e.2d 215, ¶ 132; *State v. Skipper*, 2d Dist. Montgomery No. 25404, 2013-Ohio-4508, ¶ 14. A defendant may introduce proof of the victim's threats to establish the defendant's state of mind and the effect the threat had on the defendant rather than to prove the truth of the matter asserted. *State v. Fambro*, 11th Dist. Trumbull No. 2016-T-0063, 2017-Ohio-5646, ¶ 48-49. Moreover, courts routinely admit hearsay testimony under various exceptions such as an excited utterance (Evid.R. 803(2)) or a then existing mental, emotional, or physical condition (Evid.R. 803(3)). *See Id.* at ¶ 50.

{¶105} When a trial court excludes otherwise admissible evidence, the issue becomes whether the exclusion of proffered testimony was harmless error. A non-constitutional error is harmless when there is other substantial evidence to support the guilty verdict. *Id.* at ¶ 51, citing *State v. Webb,* 70 Ohio St.3d 325, 335, 638 N.E.2d 1023

23

Case No. 2021-L-018

(1994). In *Fambro*, this court addressed whether a trial court erred in excluding direct evidence of a threat, but found that error was mitigated by several factors. *Id.* at ¶ 52.

{¶106} First, the exclusion of the threat was mitigated by the trial court granting Fambro "wide latitude to testify regarding his state of mind and Hunter's conduct in the moments before the shooting. Fambro testified that Hunter hit him in the head with the gun; she threatened him; her tone and her volume scared him; and when struck in the head, he thought he was going to die 'because of her tone, her anger, and the situation.'" *Id.* Although Fambro did not repeat "the substance of Hunter's threat, the prosecuting attorney did so in closing argument * * *." *Id.* The second mitigating factor was that "Fambro's self-defense claim was further undermined by other evidence in the record, such as: the murder weapon being directly connected with Fambro; Fambro's efforts to conceal the crime; and the nature of Hunter's wounds * * *." *Id.* at ¶ 53. Therefore, this court held that "it cannot be reasonably concluded that the exclusion of direct testimony that Hunter threatened to kill Fambro affected the outcome of the trial." *Id.* at ¶ 54.

{¶107} Appellant argued in his first assignment of error that the trial court erred by precluding him from testifying as to statements which the court construed as hearsay. The first statement was a text message from Anderson to Herbruck of which appellant had no prior knowledge. The second statements were the live social media communications wherein appellant and Anderson exchanged threats.

**Text Message:**

{¶108} Testimony about Anderson's text message to Herbruck was admitted into evidence while the text itself was not admitted. Appellant's trial counsel proffered the exhibit stating that it had "been referenced at trial but it says got to whack a n****, bro and

Case No. 2021-L-018

Phil's response coming RN which in text message language means right now. I believe this was admissible under a hearsay exception 803.3 to show Vincent Anderson otherwise known as Ace's intent or plan to kill Mr. Jackson on the day April 26th." Trial counsel also argued that the text was admissible to impeach Herbruck's testimony because he denied knowledge of Anderson's intent to kill appellant.

{¶109} Detective Marc Christensen testified about the text message between Anderson and Herbruck. He testified that Anderson sent a text stating he needed a weapon and that on the morning of the shooting, he said, "I've got to go whack a n*****." Christensen also confirmed that Herbruck said he was coming right now. The court sustained an objection seeking to allow Herbruck to testify as to what Anderson said in the text. Anderson himself did not testify. Finally, appellant never offered any testimony about the text. Indeed, appellant was not aware of this text on the date of the shooting.

{¶110} While the court did not admit the exhibit of the text message, the court did admit Detective Christensen's testimony about the specific content of the text. The jury heard testimony about the messages and defense counsel referenced the message in closing arguments. Counsel argued that the State did not call Anderson because he would have hurt their case because there was "a text message from Vincent [Anderson] saying he's going to go whack somebody and you can be certain that I would have pointed that out."

**Social Media Threats:**

{¶111} During trial, appellant testified about the threats exchanged between appellant and Anderson. He said that he had multiple conversations with Anderson via social media. After one conversation a week before the shooting, appellant said that he

25

Case No. 2021-L-018

"**was in fear cause Ace knows where I live, he's been to my house before**. So I don't know where Ace lives at." (Bold added). After this conversation, appellant felt it was necessary to get a gun. One week later, appellant had another social media conversation with Anderson early in the morning on April 26th. Appellant told his girlfriend Trina about the conversation saying that Anderson was "**threatening me, he's threatening you.** He's talking about – oh, I can't say what he's talking about but I'm just telling her what was said on Instagram live and on the FaceTime. She ended up joining the Instagram live herself and watching it and was able to see from her end what was going on." (Bold added). Appellant also stated that Anderson was flashing guns on the FaceTime and Instagram Live videos.

{¶112} Appellant's counsel proffered testimony of the social media threats saying that he was asking appellant about specific threats that Anderson made – that Anderson was going to kill appellant, going to kill Trina, his girlfriend – and these threats were relevant to appellant's self-defense arguments because they went to appellant's belief about Anderson's intent.

{¶113} While I agree with the majority that the trial court improperly excluded both the text message exhibit and more specific testimony about the threats Anderson made to appellant, I believe that the error was harmless. Like in *Fambro, supra*, the error was mitigated.

{¶114} As to the text message, it was mitigated because the jury heard testimony from a detective with knowledge of the text message. The detective testified as to the exact content of the message as well as other statements that Anderson made to Herbruck via text. Trial counsel referenced Anderson's text as well as Anderson's own

26

absence from trial in closing arguments. Finally, appellant himself had no personal knowledge of the message, and trial counsel never attempted to elicit specific testimony from him about the text. Therefore, I would find that it was harmless error to exclude the exhibit containing the text message.

{¶115} In reference to the social media threats, there were also mitigating factors that render the error harmless. The first mitigating factor was that appellant did provide testimony that Anderson threatened him. Although appellant was not permitted to repeat the substance of Anderson's threats, he was permitted to state as fact that Anderson threatened him and Trina. Appellant was also able to state that Anderson knew where appellant lived and that he had been to his house before. Appellant further stated that he was fearful of Anderson after a conversation with him and that he obtained a gun because of that fear.

{¶116} The second mitigating factor was that appellant's self-defense claim was undermined by other evidence in the record including evidence from which a reasonable jury could conclude that appellant was at fault for creating the situation giving rise to the affray. Appellant, upon seeing Anderson in the parking lot, began to shoot at Anderson. Although appellant asserted that he acted in self-defense, the jury was charged with considering that claim and rejected it.

{¶117} Although the concurring opinion writes that the general evidence of Anderson's threats against Jackson was less impactful because the trial court excluded Anderson's specific threats, I disagree. Although Jackson was prevented from stating Anderson's specific words, the court did not preclude Jackson from speaking freely and forcefully about the impact that Anderson's threats had upon him and the fear that those

threats incited. Jackson testified that Anderson threatened him, and Jackson was free to describe his state of mind graphically and specifically to the jury because of those threats. Therefore, I do not agree that the exclusion of the specific words dampened Jackson's self-defense case. The exclusion was harmless error.

{¶118} While the trial court should not have prohibited appellant from testifying specifically about Anderson's threats made on social media, this was harmless error because there was general testimony about the nature of the threats and the effect they had on appellant.

{¶119} Accordingly, I would find that appellant's first assignment of error is without merit and would also conclude that the appellant's conviction was supported by the manifest weight of the evidence.